SUPPRESSED, Plaintiff-Appellant, v. SUPPRESSED, Defendants-Appel-
lees.

First District (5th Division) No. 1—89—2950

Opinion filed November 30, 1990.

John S. Elson, of Northwestern University Legal Clinic, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, Thomas P. McGarry, and Bruce L. Carmen, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff appeals the order of the circuit court of Cook County granting defendants' section 2—619 motion (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) and dismissing her cause of action with prejudice as barred by the statute of limitations. We affirm.

Prior to the filing of plaintiff's complaint, defendants filed a suit in chancery to obtain an order requiring that the complaint in this case be filed without revealing the names of the parties and that the court record be impounded. Such an order was obtained *ex parte* on December 2, 1988.[1] For this reason the case has proceeded under the above caption rather than the actual names of the parties.

On December 8, 1988, plaintiff, a 40-year-old woman and mother of three children, filed a three-count complaint against an attorney (herein referred to as defendant) whom she hired to represent her in a divorce action and his law firm (collectively referred to as the suppressed defendants). In count I, which purported to be a claim for breach of fiduciary duty, plaintiff alleged that defendant psychologically coerced or seduced her into having sexual relations with him at the same time that he was to be representing her in a divorce action. In count II, plaintiff sought to hold all of the shareholders of defendant's law firm, a professional service corporation, jointly and severally liable for the injuries she sustained at the hands of the defendant. In count III, plaintiff sought to hold the law firm, itself, liable for the acts of defendant.

More specifically, plaintiff alleged that, because she was having marital difficulties, she telephoned the defendant law firm on November 2, 1983, in an attempt to engage the services of an attorney. She claimed that she contacted this particular law firm because of its purported expertise in the area of domestic relations law. She was given an appointment with defendant and, after meeting him and speaking with him on November 4, 1983, she paid him a $2,500 retainer upon his agreement to represent her in a divorce proceeding. After a brief attempt at reconciliation with her husband, plaintiff met with defendant on November 15, 1983, at which time they discussed, at length,

---

[1]A petition concerning the suppression of the parties' names was filed with the Illinois Supreme Court. The motion for supervisory order, entitled *Elson v. Murray*, docket No. 70020, was denied on June 26, 1990.

her marital situation and her impending divorce litigation.

Plaintiff further avers that subsequently, on December 10, 1983, she went to defendant's office, at his request, to discuss her case. On this occasion defendant locked his office door and then unzipped his pants. He then requested that plaintiff have oral sex with him. Plaintiff contended that she was "stunned and confused" but that she complied because she was "fearful that he [defendant] would not advocate for her and her children's interests in her divorce case were she to refuse."

Despite plaintiff's purported aversion to defendant's behavior, she agreed to meet defendant at his office again on December 14, 1983, at which time defendant "told her that they would be going someplace." Defendant then instructed her to meet him in the building's lobby and she complied. Defendant soon joined her and obtained a taxi, which transported them to a nearby apartment building. In an apartment inside this building, defendant "insisted that [plaintiff] inhale a liquid solution" from a brown bottle, which made her lightheaded and "tingling." Plaintiff then "submitted" to sexual intercourse with defendant. Again, plaintiff contended that the only reason that she accompanied defendant and complied with his wishes was "because of her fear that her refusal to do so would jeopardize (defendant's) willingness to adequately represent her and her children's interests."

Finally, plaintiff averred that on January 11, 1984, she again agreed to go with defendant to the same apartment. She again inhaled a substance from a brown bottle and complied with his desire to engage in sexual intercourse.

Apparently, sometime in February 1984, plaintiff decided to discharge defendant as her attorney and engage another attorney to represent her in her divorce action. Plaintiff's stated reason for dismissing defendant was her "growing belief" that defendant's sexual exploitation of her was not necessary to her divorce proceeding and that his actions were contrary to her interests. The divorce litigation proceeded with new counsel and plaintiff's marriage was dissolved, apparently to plaintiff's satisfaction, on May 30, 1984.

In July 1987, plaintiff filed a complaint against defendant with the Illinois Attorney Registration and Disciplinary Commission, setting forth the same facts as alleged in the present action. After reviewing the matter, the Inquiry Board determined on August 19, 1988, that the investigation should be closed without any action taken. Then, in December 1988, nearly five years after the last alleged incident, plaintiff filed her complaint at law against defendant

and his law firm. The defendants filed motions to dismiss under the provisions of sections 2—615 and 2—619 of the Illinois Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, pars. 2—615, 2—619). Without deciding on defendant's section 2—615 motion, the trial court dismissed the complaint pursuant to section 2—619 of the Code, based upon its conclusion that the two-year statute of limitations on personal injury actions applied. (Ill. Rev. Stat. 1987, ch. 110, par. 13—202.) The trial court inserted into the order the language from Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) making the decision final and appealable and plaintiff has filed this timely appeal.

On appeal plaintiff argues that the trial court erroneously applied the two-year statute of limitations for personal injury actions to the case. (Ill. Rev. Stat. 1987, ch. 110, par. 13—202.) She contends that her complaint states a cause of action for breach of the fiduciary duty owed by an attorney to his client, which is a breach of the unwritten contract for legal services, thereby invoking the five-year statute of limitations. (Ill. Rev. Stat. 1987, ch. 110, par. 13—205; see also *Tucek v. Grant* (1984), 129 Ill. App. 3d 236, 472 N.E.2d 563 (claim of legal malpractice falls within the ambit of five-year statute of limitations dealing with actions on unwritten contracts and other civil actions not otherwise provided for).) Alternatively, plaintiff attempts to convince this court that defendant fraudulently concealed from plaintiff the fact that his actions created a conflict of interest, giving rise to a cause of action. Thus, plaintiff argues that the statute of limitations to be applied is the one applicable to cases involving fraudulent concealment. Ill. Rev. Stat. 1987, ch. 110, par. 13—215.

This is a case of first impression despite the fact that the activity involved has been considered a wrong since biblical times. Also, surprisingly, there appears to be only one documented case that even touches upon the issue of sexual involvement in the context of an attorney-client relationship (see *Barbara A. v. John G.* (1983), 145 Cal. App. 3d 369, 193 Cal. Rptr. 422), although there have apparently been several law journal articles on the subject and various State bar and ethics committee opinions have addressed the matter.

Certainly this court is not so naive that it believes that the lack of case law is due to an absence of such activity within the legal community. However, our recognition that such activity exists, and our disapproval of it, is not what is at issue here. What is at issue is (1) whether plaintiff's complaint sets forth facts that state a cause of action for breach of the fiduciary duty owed by an attorney to his client (legal malpractice), thereby invoking the five-year statute of limi-

tations, or (2) whether plaintiff's cause of action, if a personal injury action, should still be viable because defendant fraudulently concealed the cause of action from plaintiff's knowledge.

■■■ We first consider whether plaintiff has sufficiently pled a cause of action for breach of the attorney-client contract or legal malpractice. The trial court implicitly held that plaintiff did not state such a cause of action by finding that the two-year statute of limitations applied to the case. An action for legal malpractice is one sounding in tort, which arises out of a contract, express or implied, for legal services (*Land v. Greenwood* (1985), 133 Ill. App. 3d 537, 478 N.E.2d 1203) and, as such, falls within the ambit of the five-year statute of limitations dealing with actions on unwritten contracts or other civil actions not otherwise provided for. (*Tucek v. Grant*, 129 Ill. App. 3d at 240.) Consequently, in order to determine whether the trial court correctly dismissed the case, we must first decide whether plaintiff stated a cause of action based upon her alleged breach of a fiduciary duty created by the attorney-client contract, keeping in mind that a motion to strike or dismiss admits all well-pleaded facts and any reasonable inferences that may be drawn from those facts. (*Sharps v. Stein* (1980), 90 Ill. App. 3d 435, 413 N.E.2d 75.) Also, when deciding whether a complaint states a cause of action, this court must look to the legal sufficiency, not the factual sufficiency. *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 407 N.E.2d 615.

■■ In an action for legal malpractice, a plaintiff must plead (1) that the attorney owed plaintiff a duty of care arising from an attorney-client relationship, (2) that the defendant breached that duty, and (3) that as a proximate result, the plaintiff suffered actual damages. (*Sexton v. Smith* (1986), 112 Ill. 2d 187, 193, 492 N.E.2d 1284; *Albright v. Seyfarth, Fairweather, Shaw & Geraldson* (1988), 176 Ill. App. 3d 921, 926, 531 N.E.2d 948.) We find that plaintiff's complaint fails on two counts: (1) the duty of care allegedly breached by defendant is not one that arises from the attorney-client relationship, and (2) no actual damages were alleged.

■■ Initially we note that if we were to accept plaintiff's contention that defendant in this case breached a fiduciary duty arising from the attorney-client relationship, we would be creating a new species of legal malpractice action and we would necessarily be holding that inherent in every attorney-client contract there is a duty to refrain from intimate personal relationships. Plaintiff can cite no support for this proposition, nor do we believe that any exists. Even in *Barbara A. v. John G.*, cited by plaintiff, the court only allowed the

case to proceed on the counts alleging battery and deceit and not on the legal malpractice counts. That court hesitated to impose, as a matter of law, the highest fiduciary standard in all of an attorney's relations with his client, social as well as legal. The court in *Barbara A.* also held that the question of whether it should be an actionable breach of ethics for an attorney, particularly a family law attorney, to induce a client to have sexual relations during the course of representation was a decision better left to its State bar. We agree with this reasoning.

 █ It is true that a fiduciary relationship exists, as a matter of law, between an attorney and his client, which requires that the attorney exercise the utmost of good faith and fair dealing in any transaction arising out of the legal relationship with the client. (*In re Marriage of Bennett* (1985), 131 Ill. App. 3d 1050, 476 N.E.2d 1297.) However, we feel that, essentially, the high standard of care required of a fiduciary imposes upon an attorney a duty to provide competent legal representation. The fiduciary duty owed by an attorney differs from the fiduciary duty owed by a psychotherapist.[2] (See *Horak v. Biris* (1985), 130 Ill. App. 3d 140, 474 N.E.2d 13 (duty of therapist is to engage in activity or conduct calculated to improve patient's mental or emotional well-being); *Corgan v. Muehling* (1988), 167 Ill. App. 3d 1093, 522 N.E.2d 15.) Consequently, the cases cited by plaintiff involving breach of fiduciary duty based on sexual involvement between a therapist and his patient, while instructive, are distinguishable.

We feel that the breach of duty alleged in a legal malpractice action must be more clearly linked to the attorney's legal representation. In the present case, the only charge against defendant that alleges a breach of his legal duty to his client is the allegation that defendant's relationship with plaintiff created a "potential conflict of interest." While this may be true, we also note that plaintiff did not charge that an actual conflict of interest existed or that she was harmed in her legal action by such a conflict.

 An attorney is only required to exercise a reasonable degree of care and skill and may not always be accountable for errors in judgment. (*Land v. Auler* (1989), 186 Ill. App. 3d 382, 542 N.E.2d

---

[2]It appears that, when imposing liability upon a psychotherapist for malpractice, courts have relied upon the fact that the psychological dependency of a patient undergoing therapy often results in a medically recognized phenomenon known as "transference," whereby the patient transfers feelings to the therapist. The mishandling of this phenomenon by a trained therapist, resulting in sexual involvement with the patient, has been deemed malpractice.

509.) An attorney, just like the client, is at best and at worst a human being fraught with all the frailties that the status entails. For this reason we do not believe that the higher standard of care required of a fiduciary should extend to an attorney's personal relationships with his clients, unless there is tangible evidence that the attorney actually made his professional services contingent upon the sexual involvement or that his legal representation of the client was, in fact, adversely affected.

■ We acknowledge that plaintiff alleged that *she felt* that it was necessary to accede to defendant's desire to have a sexual relationship because of his status as her attorney. However, we find that this statement is too tenuous and falls short of an allegation that defendant made sexual favors a *quid pro quo* for his legal services. Consequently, we find that plaintiff failed to allege legally sufficient facts concerning the breach of a fiduciary duty owed to her by defendant. Although defendant's behavior may have been unethical, we do not think that it equates to legal malpractice.

■ ■ Secondly, even if we were to find that it was a breach of an attorney's fiduciary duty to his client to engage in a sexual relationship simultaneous to the legal relationship, we would still be compelled to find that plaintiff failed to state a cause of action for legal malpractice in this case because plaintiff failed to allege actual damages directly attributable to the breach of duty. Actual damages have been interpreted to mean damages stemming from a loss suffered in the client's underlying legal action or some evidence that the client's legal position was somehow compromised by the breach of duty alleged. (*Claire Associates v. Pontikes* (1986), 151 Ill. App. 3d 116, 502 N.E.2d 1186.) Plaintiff here has not pled actual damages. Her marriage was later dissolved, and the divorce agreement was apparently satisfactory to her. Plaintiff did not claim that her legal position in the divorce proceedings was harmed.

We note that plaintiff alleges that the expense of hiring a new attorney to represent her after she discharged defendant was an element of damages. However, there is nothing to indicate that defendant failed to perform legal services for plaintiff so that he was not entitled to compensation in the form of retention of the retainer fee.

Finally, assuming, as we must, that the facts stated in plaintiff's complaint are true and that she suffered emotional harm as a result of her relationship with defendant, these damages are insufficient to support an action of this type. If we were to recognize that emotional harm, absent any quantifiable injury stemming from an attorney's legal representation of his client, was sufficient to support an

action for breach of a lawyer's fiduciary duty, we would be opening the door to any number of malpractice actions brought by clients who may have been less than satisfied with their legal representation but can point to no specific harm other than their own emotional distress. The potential for abuse would be too great.[3]

We do not disagree with plaintiff's suggestion that there should be a separate cause of action for a lawyer's breach of the ethical duty to conduct himself in accordance with the rules of professional responsibility. However, we feel that it should be left to the legislature to address this matter. Perhaps it would be appropriate for the legislature to create, statutorily, a new cause of action to specifically address this type of situation, similar to the cause of action recently created by statute to address the problem of sexual exploitation by psychotherapists. See Ill. Rev. Stat. 1989, ch. 70, par. 806.

In any event, however, we do not find that the facts stated in plaintiff's complaint could not have supported any cause of action against defendant. It is possible that a legally sufficient complaint for battery or intentional infliction of emotional distress could have been crafted based upon the facts presented here. However, it is not necessary to decide that here, since any such cause of action would be a personal injury action barred by a two-year statute of limitations, making the trial court's dismissal proper.

■■■ We now turn our attention to plaintiff's second claim, that defendant fraudulently concealed the fact that a cause of action existed, making the claim susceptible to the five-year statute of limitations. Our review of the record reveals that this argument was not raised before the trial court. Consequently, we find that we need not address the merits of the argument since any matter raised for the

---

[3]We believe that to allow an action for legal malpractice based upon the fact that an intimate relationship occurred between the attorney and his client during the course of the legal relationship, when supported only by damages such as mental anguish, shame, humiliation, injury to feelings, defamation or some unspecified injury to character, would be tantamount to allowing a claim for seduction, alienation of affections, or criminal conversation to proceed under less strict standards than required by statute for actions of this type, merely by virtue of the fact that the parties involved happened to have met in the context of a legal relationship. Additionally, we feel an obligation to proceed most cautiously because creation of such a new cause of action could have a serious chilling effect upon all attorney-client relationships and because our legislature has already recognized that actions seeking redress for intangible or indefinite damages in actions of this nature, as cited above, have a grave potential to be used for blackmail by unscrupulous persons seeking unjust enrichment. See Ill. Rev. Stat. 1989, ch. 40, pars. 1801 through 1810, 1901 through 1907, 1951 through 1957.

first time on review need not be considered. (*Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47.) We note, however, that if we were to consider the matter, it is highly improbable that we would find that a defendant could have fraudulently concealed a personal injury cause of action from a plaintiff, due the very nature of a personal injury action.

For the reasons stated above, we affirm the order of the trial court dismissing plaintiff's complaint with prejudice.

Affirmed.

COCCIA, P.J., and LORENZ, J., concur.