[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This Memorandum of Decision relates to the Plaintiff's Motion to Reopen/Vacate Judgment dated February 3, 1995 which was CT Page 2963 the subject of an evidentiary hearing on February 22, 1995 in which both parties as well as counsel for the minor children and counsel for the Attorney General's office participated. A brief recitation of the procedural history of this file may be helpful.
The plaintiff commenced this action by complaint dated November 27, 1992 and returned to the Tolland Judicial District. In addition to a marital dissolution, the plaintiff sought custody of the parties' three minor children, support, alimony, as well as orders relating to property and the payment of fees. The defendant Michael Brown appeared by counsel on December 11, 1992. Shortly thereafter he filed a motion for custody, support, alimony, payment of fees and exclusive use of certain real and personal property. On July 27, 1993 Attorney Steven Robert Appletree of Hartford appeared for the plaintiff in lieu of her original counsel. On November 12, 1993 Attorney George S. Szydlowski, Assistant Attorney General, appeared in this matter to protect the interest of the State of Connecticut on the basis that the plaintiff was then receiving assistance from the State.
During the pendency of this matter the court referred the parties' custody and visitation issues to its Family Services Unit which on April 20, 1994 filed a report with the court recommending, inter alia, that sole custody of the children should be awarded to the plaintiff with specific rights of visitation to Mr. Brown. (Joint Exhibit A-2). On June 22, 1994 the court, Kaplan J., sua sponte, appointed Attorney Marianne Lassman Fisher of Suffield to represent the parties' minor children, and subsequently, on November 21, 1994 Judge Kaplan expanded Attorney Fisher's appointment to Guardian ad Litem.
The matter, having previously been referred to the Regional Family Trial Docket in Middletown, was scheduled for a Special Masters session in Middletown on September 21, 1994 which was attended by the parties, all counsel then of record, and Special Masters Attorney David Marder and Attorney Jennifer Davis. Following a second Special Masters session on the morning of September 27, 1994 this matter was heard by Judge Joseph Steinberg before whom the parties presented an oral agreement encompassing the issues of custody and visitation, child support and alimony as well as an agreement relating to the payment of rent to the defendant by the plaintiff. (cf. Defendant's Exhibit 1, a transcript of the September 27, 1994 hearing) At that hearing Judge Steinberg entered a dissolution of the marriage as well as ancillary orders pursuant to the parties stated CT Page 2964 agreement. The court also accepted the parties's joint request that the court reserve decision on the distribution of assets and payment of bills with the intention that the parties would return to court in the Tolland Judicial District for resolution of those remaining financial issues.
A review of the court's file reveals that subsequent to the file's return to the Tolland Judicial District from Middletown on October 13, 1994 the parties have filed numerous motions relating to issues of compliance with the orders of September 27, 1994. On January 4, 1995 the court, Klaczak, J., found the plaintiff in contempt of court for her failure to make certain rental payments to the defendant pursuant to the orders entered by Judge Steinberg. Also on January 4, 1995 the plaintiff filed a pro se appearance in lieu of Attorney Appletree. Later, after an evidentiary hearing on January 10, 1995, Judge Kaplan vacated the contempt finding and orders of Judge Klaczak, and he appointed Attorney Deborah Mason of Storrs to represent the plaintiff at the expense of the Judicial Branch.
On February 3, 1995 the plaintiff, through Attorney Mason, filed the instant motion that the judgment entered by Judge Steinberg be opened and vacated. While the motion contains a number of factual allegations, the plaintiff's essential claim is that the judgment should be set aside on the alternative bases of duress or fraud. Additionally, at the commencement of the evidentiary hearing on this matter, the undersigned raised with counsel the question of whether a mutual mistake of the parties concerning the authority of the court to bifurcate its orders might be a reason to set aside the judgment. Since the date of the hearing counsel for the parties and the childrens' counsel have filed brief's encompassing all the issues implicated by the present motion.
In addition to the procedural history of this file, the court finds the following facts material to its consideration of the instant motion:
The plaintiff Kathleen Brown is approximately thirty one years old. She graduated from Ellington High School in 1982 and thereafter attended the Manchester Community College from which she received an Associates Degree. She has prior employment in a physicians office as well as some training as a hairdresser. She has the primary care of the parties three minor children who range in age from nine to four. At times during the pendency of CT Page 2965 this action she was the recipient of public assistance. At her appearance before Judge Steinberg she filed a financial affidavit with the court which reflected the receipt of state assistance in the amount of one hundred and ninety five ($195.81) dollars and eighty one cents a week. Additionally, she showed income from part-time hairdressing in the weekly amount of sixty six ($66.00) dollars. The plaintiff currently resides on the first floor of a three family residence she owns jointly with the defendant and his parents. It is a part of the September 27, 1994 orders entered by Judge Steinberg that the plaintiff pay the defendant the sum of five hundred ($500.00) dollars a month as "rent" for her use of these premises.
The defendant Michael Brown is approximately thirty two years of age. He graduated from the Howell Cheney Technical School in Manchester in 1982 and later from Diesel Tech Institute in Enfield. He has been employed by the town of Manchester at its Waste Water Treatment facility since 1989. The Defendant's affidavit dated September 20, 1994 and filed with the court reflected weekly gross income, including overtime, of seven hundred and fourteen ($714.00) dollars. At the hearing before Judge Steinberg the defendant agreed to pay child support to the plaintiff in an amount which conforms to the State's Child Support Guidelines.
Since the plaintiff's claims which give rise to this motion relate, in part, to the conduct of her former lawyer, Attorney Steven Appletree, some recitation of their attorney-client relationship is in order. At the hearing on this motion the plaintiff testified that she became concerned during the early months of the pendency of this action that her first attorney was not adequately representing her. She claimed that Attorney Appletree was recommended to her by an individual she met through, her participation in a stress group. She talked with Attorney Appletree who initially suggested that she remain with her original counsel but later she retained him to take over her representation. She claimed that when she called Attorney Appletree the second time he asked her if she wasn't the "petite little brunette" who was in his office a few months ago. She testified that she viewed his remarks as flirtatious at the time, and that she felt he was making a pass at her. She further testified that she made a financial arrangement to pay Attorney Appletree on a monthly basis, but that during the several months prior to the hearing before Judge Steinberg she was not able to comply with her monthly payment obligations resulting in a debt to CT Page 2966 Attorney Appletree by September of approximately ten thousand ($10,000) dollars. She further testified that when she discussed her indebtedness with Attorney Appletree from time to time he seemed unconcerned. He told her it was alright. She claimed that on one occasion Attorney Appletree told her that he owned a cabin that needed to be cleaned and that he would be willing to pay her the sum of one hundred ($100.00) to clean the inside of the cabin. Later, she claimed, she called Attorney Appletree to report that she had found a girlfriend who was willing to help her clean the cabin and split the payment with her. She testified that Attorney Appletree responded by telling her that's not what he had in mind, that the cabin was special to him and that he had, thought he and the plaintiff would visit the cabin together with no one else. At the hearing on this motion the plaintiff testified that she had thought it strange that Mr. Appletree had wanted to be alone with her and that she surmised that he had wanted to be intimate with her. She testified that the cabin cleaning incident did not take place as Attorney Appletree expressed no interest in the plaintiff bringing a friend to the cabin.
From the plaintiff's vantage point these occurrences in her relationship with Attorney Appletree form the backdrop to the circumstances surrounding the Special Masters sessions and the ensuing hearing before Judge Steinberg. The Plaintiff testified that she met with Attorney Appletree one week before the September 21, 1994 Special Masters session and that during this meeting Attorney Appletree proposed that she agree to pay her husband five hundred ($500.00) dollars monthly rent. When she told Mr. Appletree that she couldn't afford it, she claimed he told her that he had to offer something and that she shouldn't worry about it. On the issue of custody she testified that he told her that she could achieve with joint custody the same benefits that she would derive from an order of sole custody. She also testified that she and Attorney Appletree drove together to Middletown to the Special Masters session and that on the way he told her that if the case went to trial it was likely that the judge would order joint custody. She claimed as well that Attorney Appletree told her that she could not afford to pay the expenses of the professionals whom she would have to call to testify if the issue of custody were to be tried. She was, she claimed, under the impression that these costs would be hers alone to bear. On the question of the rental payments the plaintiff testified that on the car ride to Middletown she reiterated her concern to Mr. Appletree that she could not afford CT Page 2967 to pay rent but that he avoided the issue. She claimed he commented that he was going to pretend that he didn't hear her.
The Special Masters session on September 21, 1994 was attended by both Special Masters, the parties, their counsel as well as an Assistant Attorney General. It lasted approximately three hours from 2 p.m. until 5 p.m. Both parties as well as Attorney David Marder, testified at the hearing on this motion as to the circumstances of the Special Masters sessions on September 21, 1994 and September 27, 1994. While the plaintiff testified that she did not raise certain issues and concerns with the Special Masters because Attorney Appletree had told her that they were irrelevant, the court is satisfied from the evidence that the plaintiff had the opportunity to confer with her counsel and to speak directly to the Special Masters in the courses of the afternoon of the first session. At the conclusion of this session the Special Masters informed the parties and their counsel that they would be willing to meet once again with them if the Browns could indicate an agreement on the issue of custody prior to an anticipated second session. Attorney Marder testified that he and Attorney Davis agreed to such a second meeting on the belief that if the parties could come to a consensus on parenting issues they would be willing to conduct another Special Masters session to deal with finances. The plaintiff testified that following this initial session and in consultation with Attorney Appletree she did agree to an order of joint custody with the children to live with her. She authorized Attorney Appletree to signal her assent to counsel and the Special Masters in order for the anticipated second Special Masters session to go forward on September 27, 1994. At this second session which took place during the morning of September 27 in Middletown, the parties and counsel were present with the Special Masters during the entire process. While Attorney Marder did not have a specific recollection of the details of the discussion he recalled that the plaintiff appeared; to be an active participant and was not prevented from voicing her concerns during the session. By the end of this second session the parties had reached a partial agreement encompassing custody, visitation, support, alimony and the plaintiff's payment of rent to the defendant. The agreement was made by the parties in the presence of each other, their counsel and the Special Masters without having conferred privately with their own counsel during the session. At the conclusion of the session the parties and their lawyers left the special masters session and went together into another room to go over the terms of their agreement. The plaintiff did not ask for an opportunity to CT Page 2968 privately review the agreement with Mr. Appletree; she did not meet alone with him before entering the court room to appear before Judge Steinberg. The parties and counsel went directly from the room in which they met jointly to the court room in order to be heard by Judge Steinberg before the lunch break.
It is the plaintiff's claim that she agreed to joint custody and the rental payments because her counsel, as well as the process of the Special Masters sessions, had led her to the belief that she had no choice but to submit to an agreement with which she did not genuinely concur. After the hearing the plaintiff and her lawyer went to lunch together. Later they returned in Mr. Appletree's car to a commuter lot where the plaintiff had left her vehicle. The plaintiff testified that she and Mr. Appletree had drinks at lunch during which they discussed each other's families but that on the ride home Mr. Appletree proposed that she live with him and that he would provide for her needs while she cared for his children. She claimed that during this conversation Mr. Appletree offered to purchase her a Jaguar automobile, and that she could have anything that she wanted. The plaintiff testified that once Mr. Appletree made this proposition she felt surprised but then she sensed some connection between this offer and Mr. Appletree's previous advice to her, as well as earlier comments he had made to her. She testified that her understanding of Mr. Appletree's proposition was that he wanted her to live with him and she believes that he likely had this intent in mind while he was advising her to accept a marital dissolution agreement which included a rental provision she did not believe she could afford to pay. The plaintiff believes this conduct by her counsel constitutes a fraud on the court.
At the outset, it should be noted that this judgment was the product of an agreement and was not an adjudication on the merits of the parties respective claims. While such a judgment has the same vitality as an adjudication, the rules pertaining to its reopening differ from those pertaining to judgments flowing from contested hearings. Gillis v Gillis, 214 Conn. 336, (1990). As to any civil judgment, it is a foundational tenet that a judgment may not be reopened or set aside unless a motion to open or to set aside is filed within four months following the date on which it was rendered or passed. Connecticut General Statutes § 52-212a; Practice Book § 326. There are however two circumstances in which a motion to reopen or set aside may be entertained by the court beyond the four month limitation period. The parties may waive the time period. Additionally, a judgment obtained by the CT Page 2969 consent of the parties may be reopened without the assent of the parties. . ." if it is shown that the stipulation, and hence the judgment, was obtained by fraud, in the actual absence of consent, or by mutual mistake." Kenworthy v. Kenworthy, 180 Conn. 129
(1980) Thus, if the court can determine that the judgment on September 27, 1994 was obtained by fraud, without consent, or by mutual mistake the four month limitation on the reopening of judgments is not a bar.
The plaintiff's claims of duress and fraud are interwoven, though not identical. As to her allegation of fraud, the plaintiff claims that the fraud in this case was committed not by the defendant but by her former counsel, Steven Appletree. "Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed." Billington v. Billington,220 Conn. 212 (1991). In Billington the court outlined the elements of fraud: . . ." (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." Billington, supra, 220 Conn. 217. Fraud need not be perpetuated by one party on the other. Where both parties join in concealing relevant information from the court, a judgment so procured may be set aside. Baker v. Baker, 187 Conn. 315
(1982). In this case the plaintiff urges the court to set aside the judgment on the basis of her claim that she was fraudulently induced by her counsel, Steven Appletree, to enter into the agreement both during the Special Masters sessions as well as before the court. She points, however, to no misrepresentations of fact by her former attorney. Rather, she claims that he gave her advice which may not have been accurate and which, with hindsight, she later determined was motivated by her former attorney's personal interest in her. She makes no claim that the defendant participated in a fraud. While not binding on this court, it is instructive that the Federal Rulesof Civil Procedure require that fraud, misrepresentation, or misconduct be perpetrated by an adverse party in order to entitle the harmed party to relief from a judgment. Federal Rules ofCivil Procedure, Rule 60(b)(3), 47 Am.Jur.2d, Judgments 834. This is not to say that a client whose counsel gives her advice and urges a course to her against her interest and in furtherance of his covert and mischievous interest is without remedy. Our Supreme Court has explicitly declined to adopt a rule that an attorney may not be held liable for negligently advising a client CT Page 2970 to enter into a settlement agreement. Grayson v. Wolfsey, Rosen,Kweskin and Kuriansky, 231 Conn. 168 (1994). cf. also Suppressedv. Suppressed III, 206 Ill. App.3d 918, 565 N.E.2d 101 (1990). The plaintiff further argues that her former attorney's behavior constituted a fraud on the court thus warranting the relief requested. As to this latter claim, our Supreme Court has held that ". . . the concept of a fraud on the court is properly confined to situations where both of the parties intentionally conceal material information from the court." Billington v. Billington,220 Conn. 212, 217 (1991). The claim of fraud is unavailing as a basis to reopen the judgment.
As a second ground the plaintiff urges the court to reopen the judgment on the basis of duress. The classical or common law definition of duress is "any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition." Jenks v. Jenks, 34 Conn. App. 462
(1994). Additionally, to constitute duress, the behavior must be sufficient to actually overcome the will of the person against whom it is applied. Id., 466. Finally, our Appellate Court has held that the acts constituting duress must be contemporaneous with the execution of the agreement. Id. Here the plaintiff complains that the conduct of both her former attorney as well as the manner in which the Special Masters sessions were conducted constituted duress. As to the latter, the court is satisfied from the testimony adduced at the hearing that the plaintiff had a reasonable opportunity to participate and did, in fact, verbalize her concerns during both sessions. AS to the acts of her attorney, the court does not find his behavior, no matter how it may ultimately be characterized in terms of his professional responsibility to her, to constitute duress warranting the reopening of the judgment. It is noteworthy that at the hearing Judge Steinberg thoroughly and carefully questioned each party as to their assent to the agreement. The transcript of the proceedings reveals the following colloquy between the court and Mrs. Brown:
THE COURT: "Have you heard the agreement that was just delivered to the Court verbally by the parties?"
MRS. BROWN: "Yes."
THE COURT: "Did you understand it?"
THE COURT: "Have you heard the agreement that was just CT Page 2971 delivered to the Court verbally by the parties?"
MRS. BROWN: "Yes."
THE COURT: "Did you understand it?"
MRS. BROWN: "Yes."
THE COURT: "Did you participate in the discussion that led to this agreement?"
MRS. BROWN: "Yes."
THE COURT: "And did you discuss the agreement as it was developing with your attorney?"
MRS. BROWN: "Yes."
THE COURT: "So that you do understand the agreement clearly?"
MRS. BROWN: "Yes."
THE COURT: "Are there any questions that you want to ask to clarify any part of it?"
MRS. BROWN: "No."
THE COURT: "Do you understand your responsibilities?"
MRS. BROWN: "Yes."
THE COURT: "— within this agreement? Do you consider the agreement to be a fair and reasonable one?
MRS. BROWN: "Yes."
THE COURT: "Are you asking the Court to approve that agreement and make those terms the terms of your divorce?"
MRS. BROWN: "Yes."
THE COURT: "Thank you. You understand that the bills have not been distributed and that the assets have not been distributed?" CT Page 2972
MRS. BROWN: "Yes."
THE COURT: "That will be done when you get back to the original court?"
MRS. BROWN: "Yes." Defendant's Exhibit 1 pp. 11-12.
Under our law, at the time of a marital dissolution hearing based upon the agreement of the parties the court has a duty to conduct a searching inquiry to make sure that the settlement agreement is substantively fair and has been knowingly negotiated. Monroe v. Monroe, 177 Conn. 173 (1979), Hayes v.Beresford, 184 Conn. 558, (1981), Jucker v. Jucker, 190 Conn. 674, (1983). Absent strong evidence to the contrary, the law presumes that a judge properly performed his duties. Brash v. Brash,20 Conn. App. 609, (1990). In this case, it is evident from the transcript that the court, Steinberg, J., posed numerous questions giving the plaintiff an adequate opportunity to display, any unhappiness with or misunderstanding of the oral agreement. In reviewing the adequacy of the colloquy, the test is whether a reasonable person could conclude from the canvass that the plaintiff entered into the agreement voluntarily. Gillis v.Gillis, 214 Conn. 336, (1990), Jenks v. Jenks, 34 Conn. App. 462,469, (1994). To this question the court answers in the affirmative. The range and scope of Judge Steinberg's questions together with the plaintiff's responses were sufficient to satisfy the court that the plaintiff assented to the agreement. To require the court to plumb the psyche of each party to a marital dissolution agreement would impose the duties of a psychologist on the court, a role for which the court is ill suited.
At the commencement of the hearing on this motion the court's raised the additional question of whether this agreement may have been the product of a mutual mistake. That concern was premised on the notion that the court may only enter property disposition orders at the final hearing and thus, the parties, in requesting that the court reserve until a later date issues of assets and bills, were operating under a mistaken belief that the court could, in fact, bifurcate its proceedings. As counsel for the children has ably briefed, the court does not have to act on all property matters at the time of the marital dissolution judgment. That is, the court's authority to assign property is "permissive and not mandatory". Mauro v. Mauro, 16 Conn. App. 680 (1988). CT Page 2973
The question remains though that if the court does not assign property at the time of the marital dissolution does it retain the jurisdiction to make any such orders in the future. cf. Connecticut General Statutes § 46b-81 which states in part, "At the time of entering a decree annulling or dissolving a marriage or for legal separation . . . the superior court may assign to either the husband or wife all or any part of the estate of the other." While this language might seem to suggest that there is just one moment in time in which the court has the authority to enter property orders in a marital dissolution action, judicial interpretation of this statute does not support such a view. It is clear that property orders once made may not be modified, that the court has no continuing jurisdiction over that portion of a marital dissolution judgment providing for the assignment of property. Bunche v. Bunche, 180 Conn. 285 (1980). But Bunche did not answer the question of whether the court may later act on property untouched by its original decree. The short answer to this issue is that our Supreme Court has held that the trial court may, in fact, reserve decision on the financial aspects of a marital dissolution to a time subsequent to its entry of a judgment of dissolution. Ross v. Ross, 172 Conn. 269
(1977), Walsh v. Walsh, 190 Conn. 126 (1983).
Somewhat unique to the case at hand, however, is the fact that the court did not reserve on all financial issues. Time limited alimony is a feature of the judgment this plaintiff assails. So, too, is an order requiring her to pay rent to the defendant for an undetermined time under unspoken conditions. The court is mindful of those cases which have held that issues involving financial orders in a marital dissolution are entirely interwoven and that the rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. cf. Sunbury v. Sunbury,210 Conn. 170 (1989), Daly v. Daly, 19 Conn. App. 65, (1989),Mulholland v. Mulholland, 26 Conn. App. 585 (1992), Mathis v.Mathis, 30 Conn. App. 292 (1993), Fahy v. Fahy, 227 Conn. 505
(1993), Tremaine v. Tremaine, 34 Conn. App. 785, (1994). While the crucible is fragile, its integrity is yet intact. There is no basis from which this court must conclude that the court, at its hearing on the remaining financial orders, can not take into consideration the financial orders already entered, piecing them into its mosaic of justice.
For the reasons stated herein, the plaintiff's Motion to CT Page 2974 Reopen/Vacate is denied.
Bishop, J.