HECHT, Justice
(dissenting).
Because I believe the district court erred in directing a verdict on two of Melissa Stender’s theories of liability, I respectfully dissent.
As the majority has correctly observed, we review the evidence in the light most favorable to a party resisting a motion for directed verdict. See Dettmann v. Kruckenberg, 613 N.W.2d 238, 250-51 (Iowa 2000). We review the district court’s ruling to determine whether Stender presented substantial evidence on ¡each element of her claims. See Gibson v. ITT Hartford Ins., 621 N.W.2d 388, 391 (Iowa 2001). “Evidence is substantial if a jury could reasonably infer a fact from the evidence.” Balmer v. Hawkeye Steel, 604 N.W.2d 639, 641 (Iowa 2000). Applying these principles, I conclude the district court erred in failing to submit to the jury Stender’s claim that Anthony Zane Blessum was negligent in his representation of her in connection with the will. For reasons explained below, I also conclude Blessum’s fiduciary-duty theory should have been submitted to the jury.
*518 I. The Negligence Claim.
The majority affirms the directed verdict on Stender’s claim that Blessum was negligent in engaging in a sexual relationship with her while representing her in connection with a will on two grounds. First, my colleagues in the majority conclude Blessum owed no actionable duty to avoid a sexual relationship with Stender while representing her. Second, they conclude the negligence claim was properly withheld from the jury because Stender offered “no evidence of any actual injury, loss, or damage ... separate from the damages resulting from the assault.”
A. Duty to Avoid a Sexual Relationship. The subject of sexual relationships between lawyers and their clients is addressed in rule 32:1.8(j) of the Iowa Rules of Professional Conduct for lawyers. In relevant part, that rule provides,
A lawyer shall not have sexual relations with a client, or a representative of a client, unless the person is the spouse of the lawyer or the sexual relationship predates the initiation of the client-lawyer relationship.
Comment 17 to rule 32:1.8(j) explains the rationale for prohibiting sexual relationships between lawyers and their clients and provides additional context:
The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence. The relationship is almost always unequal; thus a sexual relationship between lawyer and client can involve unfair exploitation of the lawyer’s fiduciary role, in violation of the lawyer’s basic ethical obligation not to use the trust of the client to the client’s disadvantage. In addition, such a relationship presents a significant danger that, because of the lawyer’s emotional involvement, the lawyer will be unable to represent the client without impairment of the exercise of independent professional judgment. Moreover, a blurred line between the professional and personal relationships may make it difficult to predict to what extent client confidences will be protected by the attorney-client evidentiary privilege, since client confidences are protected by privilege only when they are imparted in the context of the client-lawyer relationship. Because of the significant danger of harm to client interests and because the client’s own emotional involvement renders it unlikely that the client could give adequate informed consent, this rule prohibits the lawyer from having sexual relations with a client regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client.
(Emphases added.) Thus, to protect clients from exploitation, lawyer’s professional judgment, and confidences and evidentiary privileges accordant to the fiduciary relationship, the rule prohibits most sexual relationships between lawyers and clients, regardless of actual prejudice or consent.
A lawyer’s duty to avoid sexual relationships with clients arises because such relationships create obvious and inherent risks of financial and emotional injuries to clients.[13] A power imbalance between lawyers and their clients—often arising from clients’ vulnerable personal and financial positions—tends to significantly undermine the consensual aspects of sexual relationships between them. See Iowa *519 Supreme Ct. Att’y Disciplinary Bd. v. Marzen, 779 N.W.2d 757, 760 (Iowa 2010) (applying the principle that the professional relationship between a lawyer and a client makes the client’s “consent” to a sexual relationship with the attorney impossible in the context of an attorney-client relationship); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hill, 540 N.W.2d 43, 44 (Iowa 1995) (identifying the unequal balance of power between an attorney and a client as the reason for the rule prohibiting sexual relationships between them). A sexual relationship with a client jeopardizes the lawyer’s loyalty and independent judgment, which are essential features of the lawyer-client relationship. Iowa R. Profl Conduct 32:1.7 cmt. 1 (“Loyalty and independent judgment are essential elements in the lawyer’s relationship to a client.”). Put simply, sexual relationships between lawyers and their clients are fraught with risk of financial and emotional injuries to clients. Because the risk of such injuries to clients is so grave, the rules of professional conduct for lawyers do not merely recommend avoidance of sexual relationships with clients—the rules categorically prohibit the commencement of such relationships during a lawyer-client professional relationship. Blessum clearly breached his professional duty to avoid a sexual relationship with Stender.
The majority acknowledges Blessum breached an ethical duty under rule 32:1.8(j) by engaging in the sexual relationship with Stender but concludes the breach was of no legal consequence in this case. Perceiving no connection between the sexual relationship and a breach of some other professional duty owed by Blessum to Stender (e.g., negligence in preparing a defective will), the majority affirms the directed verdict. Applying the principles that limit our standard of review in this case, I come to a different conclusion.
I find substantial evidence in the record tending to establish a sufficient nexus between the sexual relationship and the legal services provided by Blessum. Stender presented evidence supporting a finding that Blessum reinitiated the lawyer-client relationship by wrongfully advising her that she needed a will to assure her property would be inherited by her children. She also offered expert testimony suggesting Blessum’s legal advice on this point was inaccurate because her property would pass to her children even if she died intestate. During trial, Stender repeatedly pressed her theory of the required nexus between the lawyer-client relationship and Blessum’s sexual misconduct: Blessum gave the inaccurate legal advice as a pretext for reestablishing the lawyer-client relationship in furtherance of an improper personal relationship. When I view the record, as I must, in the light most favorable to Stender, I find she presented sufficient evidence to engender a fact question on her claim of a nexus between Blessum’s conduct in reestablishing the lawyer-client relationship for the purported purpose of drawing an unnecessary will and the ensuing improper sexual relationship. This nexus is analogous to the one supporting a civil action against an attorney who provides legal services on the condition that the client engage in sexual activity. See Suppressed v. Suppressed, 206 Ill.App.3d 918, 151 Ill.Dec. 830, 565 N.E.2d 101, 105 (1990) (acknowledging rule that breach of lawyer’s duty prohibiting sexual relationship is actionable if professional services are contingent upon the client’s participation in a sexual relationship).
I would reject the majority’s no-duty rule under the circumstances of this case for other important reasons. First, rule 32:1.8(j) establishes a clear standard of conduct for lawyers. The majority correctly notes that the scope to our rules of *520 professional conduct cautions that the rules of professional conduct are not designed to be a basis for civil liability. See Iowa R. Prof 1 Conduct eh. 32 Preamble & Scope [20], Yet, since the rules “do establish standards of conduct by lawyers, a lawyer’s violation of, a rule may be evidence of breach of the applicable standard of conduct.” Id. I believe rule 32:1.8(j) establishes a standard of conduct—a bright-line rule—clearly violated in this case by Blessum. The district court erred in excluding evidence of this standard and expert testimony opining that the standard was breached and also erred in directing a verdict in Blessum’s favor on this theory of negligence.
•Second, I would, hew closely to the principle that no-duty rules should be reserved for “exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases.” Restatement. (Third) of Torts: Liab. for Physical ,& Emotional Harm § 7(b), at 77 (Am. Law Inst. 2010). I can conceive of no principle or policy justifying a no-duty rule for lawyers engaging in. sexual relationships with their clients, especially in cases like this where evidence tends to show the lawyer knew of the client’s particular vulnerabilities.
In my view, policy considerations point decisively in favor of the recognition, of a duty in this case. The risks of client injury attending such relationships are deemed sufficiently grave to justify severe. sanctions under our rules regulating professional conduct. See, e.g., Marzen, 779 N.W.2d at 769 (suspending attorney’s license for at least six months); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Furlong, 625 N.W.2d 711, 714 (Iowa 2001) (suspending license for at least eighteen months); Hill, 540 N.W.2d at 45 (suspending license for at least twelve months). Yet despite disciplinary sanctions imposed by this court against attorneys engaging in improper conduct of this type, the prohibited relationships persist, suggesting such sanctions do not adequately deter the wrongful conduct. A civil damage remedy is justified—indeed, required, in my view—-by a policy favoring protection of confidential, fiduciary, and privileged lawyer-client relationships and a policy of deterrence against sexual misconduct that is destructive of such relationships. The majority’s no-duty rule undermines these important policies, especially in this case where Stender advanced a plausible nexus between Blessum’s purpose for reestablishing the lawyer-client relationship and his improper sexual conduct.
B. Damages Caused, by the Sexual Relationship. Although rule 32:1.8(j) establishes a clear standard of conduct for lawyers, a civil.action for its breach requires proof that the sexual relationship caused damages. I dissent from the majority’s conclusion that the directed verdict on the negligence claim was justified for lack of substantial evidence of damages caused by Blessum’s breach of the duty to avoid a sexual relationship with Stender. The district court acknowledged that Stender presented substantial evidence of severe physical and emotional injuries resulting from the assault and battery. Ignoring that comment 17 to rule 32:1.8(j) instructs that “the client’s own emotional involvement renders it unlikely that the client could give adequate informed consent,” the district court found that Stender consented to other aspects of the sexual relationship and thus, as a matter -of law, suffered no compensa-ble emotional injury from the sexual relationship beyond that for which she could be compensated under the assault and battery theory.[14] But see Marzen, 779 N.W.2d *521 at 760 (concluding a client’s consent does not excuse a lawyer’s sexual relationship with a client). The majority affirms on this issue, finding “no evidence of any actual injury, loss, or damage ... separate from the damages resulting from the assault.” I disagree.
Again viewing the record in the light most favorable to Stender, I credit the substantial evidence tending to establish that even before Stender was severely beaten by Blessum, the relationship between the parties was tumultuous and marked by great emotional turmoil. A reasonable jury could find on this record that Stender was exquisitely vulnerable to emotional injury because she had an unfortunate preexisting history of sexual abuse and posttraumatic stress—a history of which Blessum was aware when he commenced the sexual relationship. I find substantial evidence in the record tending to prove Blessum expressly used his knowledge of that history in asserting power over Stender during the assault and that Stender suffered substantial emotional distress as a consequence of the sexual relationship before and after the severe beating. Accordingly, under the applicable standards of review, I believe the district court erred in concluding Stender failed to engender a jury question on damages arising from Blessum’s breach of duty.
II. The Fiduciary-Duty Claim,
The majority affirms the directed verdict on Stender’s breach of duty claim on the ground that “a sexual relationship alone cannot be the basis for a breach of fiduciary duty or legal malpractice claim, absent some link between the sexual relationship and a wrong committed in the scope of the legal representation.” The rationale offered for a no-duty rule in this context is that “sexual intercourse between two consenting adults is not, of itself, actionable conduct.” Kling v. Landry, 292 Ill.App.3d 329, 226 Ill.Dec. 684, 686 N.E.2d 33, 40 (1997). But consent is an odd justification for the majority’s adoption of the rule because we have previously concluded—consistent with comment 17 to rule 32:1.8(j)—that a lawyer’s duty to avoid a sexual relationship with a client is not vitiated by the client’s consent. Marzen, 779 N.W.2d at 760.
As the majority has noted, a lawyer owes a client a fiduciary duty precluding the lawyer’s employment of powers arising from the lawyer-client relationship in a manner adverse to the client’s interest. See Restatement (Third) of the Law Governing Lawyers § 49 cmt. 6, at 348 (Am. Law Inst. 2000). A reasonable juror could credit Stender’s testimony that Blessum threatened Stender during the beating, as he attempted to coerce her into having sex, by saying that if she thought the “other men have hurt [her], ... just wait and see what [he] do[es] to [her].” Blessum learned this information during the course of the lawyer-client relationship. His threat thus constitutes substantial evidence that Bles-sum employed—to Stender’s disadvantage—information about her past that she revealed to him during the course of the confidential lawyer-client relationship, thus breaching his fiduciary duty.
Viewing the evidence and reasonable inferences in the light most favorable to Stender, I also conclude reasonable inferences from the evidence tend to support *522 her theory that Blessum did not deal with her honestly when he reinitiated the lawyer-client relationship based upon the false representation that she needed a will to assure her children would inherit her property. On this basis, too, I conclude substantial evidence supported a finding that Bles-sum engaged in dishonesty and thereby violated his fiduciary duty to Stender.
Because a reasonable juror could find that Blessum used information he acquired within the scope of the lawyer-client relationship to Stender’s disadvantage during the assault and that Blessum dishonestly reinitiated the lawyer-client relationship as a pretext for beginning a sexual relationship, the theory of liability based on a breach of a fiduciary duty should have been submitted to the jury.
III. Conclusion.
For the reasons I have expressed, I find merit in Stender’s appeal. I would reverse the directed verdict on both the negligence and fiduciary-duty issues and remand for a new trial.
Wiggins and Appel, JJ., join this dissent.

. As the text of the rule suggests, the rule does not establish a categorical prohibition of sexual relationships between lawyers and clients. When a sexual relationship predates the lawyer-client relationship or occurs within a marital relationship, the rule does not forbid the relationship.

. In refusing, to submit Stender’s negligence theory, the district court observed that any *521 emotional distress suffered by Stender solely because of the sexual relationship (and apart from the distress caused by the beating) would not have been compensable if she and Blessum had not been in a lawyer-client relationship. But, of course, the prohibited sexual relationship between the parties in this case occurred within their lawyer-client relationship.