MARGARET HORN, Plaintiff-Appellant and Cross-Appellee, v. PAUL A. CROEGAERT, Defendant-Appellee and Cross-Appellant.

Fifth District   No. 5—87—0568

Opinion filed April 26, 1989.—Rehearing denied September 6, 1989.

Eric L. Terlizzi, of Pfaff, Garner & Terlizzi, of Salem, for appellant.

Robert E. Shaw, of Musick & Mitchell, P.C., of Mt. Vernon, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

A jury will hear Margaret Horn's claim that her lawyer committed malpractice, because we reverse summary judgment entered against her and remand for further proceedings.

■■ Summary judgment can be entered only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.

We find issues of fact. We find the need for a jury.

Margaret Horn is the widow of an Illinois judge and a pensioner as his surviving spouse.

She knew Frank Yockey, an oil man, who had few assets, but she liked him anyway. She wanted marriage but did not want her pension to perish. Yockey also wanted to marry her, but saw the pension business the same as she. So, plaintiff and Yockey decided to meet with defendant, a lawyer.

Defendant told them that if they married, plaintiff would lose her pension, so they should just go on living together as if they were man and wife, and, in addition, enter into a business relationship.

They did both.

The business part involved oil.

But, plaintiff was uneasy. She felt her best interests called for a written agreement covering the oil business with Yockey and she asked defendant about it. According to plaintiff, defendant said in reply, "You can't get an oil man to sign anything in writing. They can't read." So, she never asked Yockey for a written agreement.

Plaintiff and Yockey pursued a make-believe man and wife relationship, Yockey with little other than a nose for oil, and plaintiff with her economic assets, including her pension.

They pursued oil as partners.

Then, as surely as foreshadowed in any soap opera, Yockey struck oil, hauled down what he had professed to be a flag of love, broke camp, packed up and dumped plaintiff.

Plaintiff, of course, knew that Yockey could not have been so cavalier had they been married, and naturally remembered the business relationship touching oil she and Yockey had. She sued Yockey for her

share of the oil business. But, along the way, as she pressed for payment, it became obvious that it is easier to prove a deal when it is in writing than when one's word is pitted against another's. So, she settled for less than she felt she was entitled.

Feeling short-changed by the results of her case against Yockey, she sued defendant for legal malpractice. She claimed the legal malpractice was (a) bad advice and (b) failure to give advice.

Her theory: (a) bad advice—the only thing that prevented marriage was the pension question, and contrary to defendant's advice, marriage would not have destroyed the pension; therefore, advising plaintiff and Yockey to live as man and wife without benefit of marriage was bad advice, which deprived her of the protections afforded by marriage; and (b) defendant failed to advise plaintiff to get the business deal with Yockey in writing, which made it difficult to prove the existence of the business relationship as well as its extent, causing plaintiff to collect from Yockey, when she caught up with him, less than what she would have been able to collect had the business relationship been in writing instead of oral.

The circuit court granted summary judgment, holding: (1) damages for marital protection are speculative as a matter of law; (2) there was no causal connection between defendant's failure to advise plaintiff to get a written partnership agreement with her paramour and her lack of a partnership agreement; (3) the damages resulting from having no written partnership agreement are speculative as a matter of law; and (4) defendant was not guilty of a conflict of interest.

We deal with the circuit court's holding in the same order as listed above.

I

### DAMAGES FOR MARITAL PROTECTION

Damages for marital protection, in this case, could consist of economic as well as noneconomic losses, depending of course on proof at trial.

A

### ECONOMIC LOSSES

The economic losses are not speculative.

We hasten to add that we do not give the circuit court a "laundry list" of economic losses. Nor do we intend to exhaust all possibilities

of economic losses. We only point out the following in order to show that economic losses are not speculative.

Plaintiff has said that the only thing which kept her from marrying Yockey was defendant's advice. Therefore, the date of marriage can be reasonably determined. The time plaintiff would have sought dissolution of the marriage, likewise, is capable of proof. Further, the assets acquired during the time plaintiff and Yockey would have been married can be proved. This would form the basis for one element of damages, because these assets would have been "marital property."

It is true that "marital property" does not exist until dissolution. But, plaintiff's case is not to recover marital property. It is for legal malpractice, and one element of her damages is marital property she could have recovered had not defendant's advice prevented marriage.

■■ The problem of uncertainty of damages is raised by defendant. He says the amount of plaintiff's award in a dissolution, had there been a marriage, would have been disputed, and therefore, the amount is uncertain and untouchable by plaintiff because of this uncertainty. Allowing retrieval does not violate the rule prohibiting recovery of uncertain damages. Although uncertain damages cannot be recovered, once the fact of damage has been established, the extent of damages can be proven as a matter of reasonable inference, even though the result is only an approximation. (*De Koven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798.) In that regard, plaintiff could have presented testimony that she would not have had to sue Yockey on an oral contract had they been married. Instead, she would have been awarded her share of marital property. This is the fact of damage. The assets acquired during the time they would have been married can be calculated. The contributions of each toward acquisition of those assets can be determined. Therefore, within a reasonable degree of certainty, her portion that would have been carved out and awarded to her in a dissolution proceeding could be found. That amount would be one element of her damages.

Other economic losses, likewise, may be presented and calculated. We do not list them. That is a function of counsel.

B

NONECONOMIC LOSSES

Plaintiff may have noneconomic losses by virtue of not having a marriage. Loss of self-esteem, shame, public ridicule and moral anguish may be some of these losses, depending on the proof, and depending how a jury attributes causation of loss of esteem, shame, pub-

lic ridicule and moral anguish. But, the fact remains that for summary judgment purposes we cannot say these losses cannot exist. They are not speculative. They can be calculated. These losses do not strike us as significantly different from noneconomic losses that are determined by juries everyday in personal injury cases.

In days of waning virtue, marriage still has value.

## II

### LACK OF WRITTEN AGREEMENT, CAUSATION BY FAILURE TO ADVISE

■ Plaintiff says had defendant advised her about the differences in consequences between having a written agreement on the one hand and not having one on the other, instead of just telling her, "You can't get an oil man to sign anything in writing. They can't read," then she would have acted differently. She actively would have pursued a written agreement. But, it is for a jury to decide if she would have gotten a written agreement had she pursued one. Questions of causation ordinarily are for the trier of fact. *Juliano v. Oravec* (1973), 53 Ill. 2d 566.

## III

### SPECULATIVE DAMAGES—NO WRITTEN AGREEMENT

■ The circuit court found damages resulting from lack of a written agreement speculative, because plaintiff had settled her case against Yockey brought by her on an oral partnership theory.

The circuit court missed the point. Her claim is for deprivation of the quality of evidence. As such, it is not speculative. It can be calculated. Plaintiff says defendant's failure to advise her about the consequences of not having a written agreement caused her not to get one when she could, and this made it more difficult to prove both the existence of partnership and the extent of her participation in the partnership, which in turn, in recognition of realities inherent in litigation, caused her to settle with Yockey for less than she could have recovered had all been in writing. This claim is subject to proof, can be opposed by defendant, and can be calculated and awarded, or rejected and denied, all as a jury sees fit.

Of course, only plaintiff's side has been examined in this opinion. No doubt a jury will hear defendant's. However, in summary judgment only the position of the party against whom summary judgment has been entered is considered in order to determine if there is any issue, any conflict, to be resolved by a jury.

58

## IV

██ Mrs. Horn alleges in her amended complaint that the defendant was engaged in a conflict of interest by representing Yockey at the time she was receiving advice from defendant. The defendant denies any current attorney-client relationship with Yockey. This situation—a genuine issue of material fact—is to be resolved by a trier of fact, not by summary judgment.

The circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

HARRISON and GOLDENHERSH, JJ., concur.