FOURTH DIVISION
 FILED: 5/23/97















1-95-3966
 ) APPEAL FROM THE 
JANE DOE, ) CIRCUIT COURT OF
 ) COOK COUNTY
 Plaintiff-Appellant, )
 )
 v. )
 )
JOHN ROE and ROE & ROE, LTD., )
 )
 Defendants-Appellees. ) HONORABLE
 ) JOSEPH N. CASCIATO,
 ) JUDGE PRESIDING.


 JUSTICE HOFFMAN delivered the opinion of the court:
 The plaintiff, using the pseudonym Jane Doe, filed suit
against the defendant and his law firm, under the respective
pseudonyms of John Roe and Roe & Roe, claiming that John Roe
(hereinafter defendant) coerced her into a sexual relationship
with him while he represented her in an action for dissolution
of marriage. The circuit court dismissed the plaintiff's action
for failure to state a claim on which relief could be granted
(735 ILCS 5/2-615 (West 1994)). The plaintiff now appeals from
that dismissal, and from the denial of her petition for
sanctions under Supreme Court Rule 137. 134 Ill. 2d R. 137. 
The defendant cross-appeals from the denial of his petition for
Rule 137 sanctions.
 The plaintiff's first-amended complaint charged the
defendant and his law firm with breach of fiduciary duty,
intentional infliction of emotional distress, negligent
infliction of emotional distress, and fraud. The court
dismissed that complaint under Code of Civil Procedure section
2-615 (735 ILCS 5/2-615 (West 1994)), but instructed the
plaintiff to replead her claim for breach of fiduciary duty. 
The plaintiff's second-amended complaint was stricken by
agreement of the parties. Her third-amended complaint, pled in
two counts, sought recovery against the defendant on a breach of
fiduciary duty theory, and against his law firm based on
respondeat superior. The court then dismissed the third-amended
complaint under section 2-615, and this appeal followed.
 Initially, we address the plaintiff's contentions that the
court erred in dismissing her claims for intentional infliction
of emotional distress, negligent infliction of emotional
distress, and fraud as set forth in her first-amended complaint.
 A party who files an amended complaint waives any objection
to the court's ruling on prior complaints. Boatmen's National
Bank v. Direct Lines, Inc., 167 Ill. 2d 88, 99, 656 N.E.2d 1101
(1995); Foxcroft Townhome Owners Association v. Hoffman Rosner
Corp., 96 Ill. 2d 150, 153, 449 N.E.2d 125 (1983). An amended
complaint must reallege, incorporate by reference, or at least
refer to the claims and supporting facts set forth in a prior
complaint in order to preserve for review the question of the
propriety of the court's rulings in relation to the prior
complaint. See Tabora v. Gottlieb Memorial Hospital, 279 Ill.
App. 3d 108, 113-14, 664 N.E.2d 267 (1996). The supreme court
has rigidly enforced this rule, twice rejecting the notion that
dismissed claims that are not reasserted may, nonetheless, be
reviewed where the plaintiff did not manifest an intention to
abandon those claims. See Boatmen's, 167 Ill. 2d at 100;
Foxcroft, 96 Ill. 2d at 153. It makes no difference that the
plaintiff clearly expressed a desire not to abandon the claims,
or that the trial court mistakenly assured the plaintiff that
prior claims would be preserved even though they were not
realleged. See Boatmen's, 167 Ill. 2d at 100; see also Tabora,
279 Ill. App. 3d at 114. A party desiring to preserve for
review the dismissal of claims contained in a former complaint
has only two choices: she may either stand on the dismissed
counts and challenge the ruling at the appellate level prior to 
filing an amended complaint, or reallege the dismissed counts in
subsequent complaints. DuPage Aviation Corp., Flight Services,
Inc. v. Du Page Airport Authority, 229 Ill. App. 793, 800, 594
N.E.2d 1334 (1992).
 In this case, the plaintiff's third-amended complaint never
realleged, incorporated, or referred to the claims for
intentional infliction of emotional distress, negligent
infliction of emotional distress, or fraud set forth in her
first-amended complaint. In an apparent attempt to preserve
these counts, the plaintiff obtained an order from the trial
judge that the claims in the second-amended complaint would be
treated as repleaded for purposes of appeal. We note initially
that the second-amended complaint, like the third-amended
complaint, contained only a breach of fiduciary duty claim; but
in any event, the court's order purporting to treat the second-
amended complaint as repleaded was without legal effect. 
Boatmen's, 167 Ill. 2d at 100. We are constrained to treat as
waived all issues relating to the dismissal of any claims other
than that for breach of fiduciary duty as set forth in the
third-amended complaint. For the same reasons, the plaintiff
has waived her contention that the court erred in striking her
request for punitive damages, which was never reasserted after
the second-amended complaint.
 Because the plaintiff's third-amended complaint
(hereinafter "complaint") was dismissed pursuant to a section 2-
615 motion, the question before this court is whether her claim
for breach of fiduciary duty set forth a cause of action upon
which relief could be granted. Burdinie v. Village of Glendale
Heights, 139 Ill. 2d 501, 565 N.E.2d 654 (1990); Janes v. First
Federal Savings & Loan Association, 57 Ill. 2d 398, 312 N.E.2d
605 (1974). Since the question is one of law, our review is de
novo. T&S Signs, Inc. v. Village of Wadsworth, 261 Ill. App. 3d
1080, 634 N.E.2d 306 (1994). In conducting that review, we are
required to take all well-pleaded facts in the complaint as true
and draw reasonable inferences from those facts which are
favorable to the plaintiff. Ziemba v. Mierzwa, 142 Ill. 2d 42,
566 N.E.2d 1365 (1991). We are also guided by the admonition
that an action should not be dismissed on the pleadings unless
it is apparent that no set of facts can be proven which would
entitle the plaintiff to recover. Illinois Graphics Co. v. 
Nickum, 159 Ill. 2d 469, 639 N.E.2d 1282 (1994).
 The factual allegations contained in the complaint relate
the following scenario. The plaintiff was involved in an
emotionally trying divorce that included ongoing concerns over
the custody of her child. In Spring of 1983, she was introduced
to the defendant, who assured her that he could represent her
more effectively than the attorney she had engaged. The
defendant also promised to help secure a rapid settlement of her
case. Based upon these statements, the plaintiff engaged the
defendant, and in July of 1983, paid him a retainer of $7,500. 
The defendant did not furnish the plaintiff with a written fee
agreement, but orally stated that any additional legal fees
would be borne by her husband, who was believed to possess
substantial assets. The plaintiff alleged that she lacked
significant financial resources and would not have employed or
continued to employ the defendant had she known that she would
be required to pay additional attorney fees.
 During the course of the representation, the plaintiff
discussed her emotional and sexual history with the defendant,
including her anxiety over the divorce, and came to rely upon
the defendant's advice on both legal and personal matters. 
During one of the plaintiff's initial visits to the defendant's
office, the defendant began making unwanted sexual advances
towards her. He persisted in fondling the plaintiff despite her
attempts to resist, and told the plaintiff that this would make
it "much easier" for her. The plaintiff alleged that she
submitted to the defendant's sexual demands out of fear that he
would discontinue or compromise his representation of her if she
did not comply and because she could not afford to pay the
retainer for another attorney. Thereafter, the defendant made
repeated sexual demands on the plaintiff. According to the
plaintiff, she continued to engage in sexual relations with the
defendant because she had become very dependent upon him for
legal as well as emotional support.
 In May 1985, the plaintiff's former husband walked into the
bedroom of the plaintiff's home while she and the defendant were
engaged in sexual relations. The plaintiff's former husband
became outraged, and later indicated that he would not pay any
of the plaintiff's attorney fees. According to the plaintiff,
after learning of this pronouncement, the defendant failed to
seek payment of her attorney fees from her former husband,
fearing personal embarrassment and potential professional
discipline. 
 In June 1985, while the parties were in court awaiting a
hearing, the defendant presented the plaintiff with a proposed
settlement agreement, and instructed her to sign the document
without apprising her of its terms. The plaintiff contended
that she did so, unaware that it included provisions enabling
the defendant to procure a $2,500 judgment against her for his
fees and granting the defendant a lien on her home as security. 
On July 30, 1985, the defendant obtained the judgment against
the plaintiff.
 In May 1986, the plaintiff received correspondence from the
defendant's firm requesting $2,500 for services rendered. The
letter noted that this sum was in addition to the $4,000 she
already owed, and threatened that if she did not pay the
balance, she might be subjected to "some slight injury". The
letter also stated that if the plaintiff did not wish to pay her
bill in full, the defendant would be willing to work out "
'other ways' " for payment, and would be " 'in touch' " with her
soon. The plaintiff interpreted the letter to mean that unless
she continued her sexual relationship with the defendant, she
would be subjected to additional demands for attorney fees that
would be extremely difficult for her to pay. The plaintiff
discussed the matter with the defendant, who insisted that she
pay the fees, and told her that she actually owed him $40,000. 
According to the plaintiff, after she agreed to continue her
sexual relationship with the defendant, he executed a
satisfaction and release of the $2,500 judgment.
 When the plaintiff subsequently began having difficulty
enforcing the terms of her dissolution judgment, the defendant
agreed to represent her on the "same terms" as in the past. 
Based upon the defendant's failure to ask for any additional
fee, the plaintiff interpreted this statement as a demand for
her continuance of sexual relations. The plaintiff terminated
her employment of the defendant in early 1989, and commenced the
instant action.
 On appeal, the plaintiff contends that the court erred in
dismissing her claim for breach of fiduciary duty, which sought
pecuniary damages as well as additional damages for severe
emotional distress.
 A fiduciary relationship exists between an attorney and his
client as a matter of law. In re Imming, 131 Ill. 2d 239, 252-
53, 545 N.E.2d 715 (1989). Once established, the attorney-
client relationship gives rise to certain duties owed by the
attorney to the client without regard to the specific terms of
any contract of engagement. Among the fiduciary duties imposed
upon an attorney are those of fidelity, honesty, and good faith
in both the discharge of contractual obligations to, and
professional dealings with, a client. See Metrick v. Chatz, 266
Ill. App. 3d 649, 656, 639 N.E.2d 198 (1994). When, in the
course of his professional dealings with a client, an attorney
places personal interests above the interests of the client, the
attorney is in breach of his fiduciary duty by reason of the
conflict. In re Rosin, 118 Ill. 2d 365, 515 N.E.2d 85 (1987). 
Breach of fiduciary duty by an attorney gives rise to an action
on behalf of the client for proximately-resulting damages. 
Bauer v. Hubbard, 228 Ill. App. 3d 780, 785, 593 N.E.2d 569
(1992).
 In this case, the plaintiff retained the defendant to act
as her attorney in an action for dissolution of marriage, and
paid him a $7,500 retainer fee. In addition, she had paid her
prior attorney $9,350 in fees for his work on the same
dissolution proceedings. The complaint alleges that the
plaintiff had limited financial resources compared to the
substantial assets possessed by her former husband, yet the
defendant failed to seek reimbursement of the plaintiff's legal
fees from her former husband. According to the complaint, the
defendant's failure to do so was based upon his fear of personal
embarrassment and potential professional discipline if the
plaintiff's former husband raised the defendant's sexual
relationship with the plaintiff in response to a fee petition.
 Section 508 of the Illinois Marriage and Dissolution of
Marriage Act authorizes the court, after considering the
financial resources of the parties, to order one spouse to pay
the reasonable attorney fees incurred by the other spouse in the
maintenance or defense of a dissolution of marriage action. 750
ILCS 5/508 (1994). Whether the plaintiff would have been
successful in obtaining an order requiring her former husband to
reimburse her for all or a portion of the $16,850 in fees she
paid her attorneys is a matter upon which the plaintiff will
bear the ultimate burden of proof. For pleading purposes,
however, the complaint sets forth sufficient facts to support
the conclusion that the plaintiff had a viable claim for
reimbursement of attorney fees in her dissolution action, which
the defendant failed to pursue.
 There is little question that the complaint adequately pled
the existence of an attorney-client relationship between the
plaintiff and the defendant. If, as alleged, the defendant
declined to pursue the plaintiff's right to seek reimbursement
of her attorney fees from her former husband out of fear of
personal embarrassment and potential professional discipline, he
breached his fiduciary duty by placing his personal interests
above the interests of his client. Further, at least to the
extent of the $16,850 in attorney fees that the plaintiff
actually paid, and for which the defendant failed to seek
reimbursement, the complaint alleged damages proximately
resulting from the defendant's breach of fiduciary duty. Since
the plaintiff's complaint alleged facts which, if true, would
satisfy each of the elements of an action for breach of
fiduciary duty against the defendant, we find that the trial
court erred in dismissing the complaint for failure to state a
cause of action.
 However, our analysis of the issues in this appeal cannot
end here. We have been presented with questions as to the
nature and extent of the damages for which the plaintiff may
seek recovery in her breach of fiduciary duty claim, issues that
will most certainly arise again on remand.
 In addition to seeking recovery for the fees that she
actually paid, the plaintiff also sought damages for an
additional $2,500, reflecting the judgment that the defendant
obtained against her for attorney fees in excess of his
retainer. According to the complaint, the defendant assured the
plaintiff at the time of his engagement that any legal fees in
excess of his initial retainer would be borne by her husband. 
Nonetheless, the defendant subsequently obtained a judgment
against the plaintiff for an additional $2,500 in fees.
 Transactions between an attorney and a client are closely
scrutinized, and when the attorney derives a benefit from such
a transaction, it is presumed to be the result of undue
influence. See In re Marriage of Pagano, 154 Ill 2d 174, 185,
607 N.E.2d 1242 (1992); Klaskin v. Klepak, 126 Ill. 2d 376, 386,
534 N.E.2d 971 (1989). In particular, the supreme court has
held that undue influence is presumed to apply to any
transaction in which an attorney purports to alter his prior fee
arrangement with a client. Pagano, 154 Ill. 2d at 185. The
presumption is especially appropriate in dissolution cases
"where the attorney often has intimate knowledge of his client's
financial and emotional condition [ , ] so as to be able to
gauge exactly how big a fee the client is likely *** to accept
before being willing to hazard the extra costs, delays and
uncertainties of switching counsel." Pagano, 154 Ill. 2d at
185.
 In this case, while the complaint alleged that the
defendant altered the original fee agreement and obtained a
judgment against the plaintiff for legal fees in excess of the
$7,500 retainer, he released that judgment without the plaintiff
having paid him any additional money. Consequently, the
plaintiff suffered no monetary loss as a result of the judgment
and, therefore, cannot include the $2,500 sum as an element of
damage.
 The most difficult issue presented by this appeal is that
of whether emotional distress is a proper element of damage in
an action for breach of fiduciary duty against an attorney. To
be sure, the facts alleged in the plaintiff's complaint paint a
most egregious set of circumstances. Nevertheless, the issue as
framed is purely a legal one, the resolution of which requires
an examination of the very nature of the attorney-client
relationship, the extent of the fiduciary duties arising
therefrom, and the nature of an action for breach of fiduciary
duty against an attorney.
 Our research reveals only three appellate cases in Illinois
which addressed the question of whether emotional distress
damages are recoverable against an attorney in a legal
malpractice action. See Suppressed v. Suppressed, 206 Ill. App.
3d 918, 565 N.E.2d 101 (1990); Horn v. Croegaert, 187 Ill. App.
3d 53, 542 N.E.2d 1124 (1989); Maere v. Churchill, 116 Ill.
App. 3d 939, 452 N.E.2d 694 (1983). We will dispense with any
attempt to analyze the Horn opinion, as the court in that case
did not favor us with any reasoning or citation to authority in
support of its conclusion that damages for emotional distress
are recoverable in a legal malpractice action. See Horn, 187
Ill. App. 3d at 56-57. Additionally, it appears that the
plaintiff in Horn sought only economic damages by reason of her
attorney's alleged malpractice; it was the court on review that
ventured its opinion that she might also be entitled to non-
economic damages by reason of her "[l]oss of self-esteem, shame,
public ridicule and moral anguish" (see Horn, 187 Ill. App. 3d
56), thus rendering the court's pronouncement on the matter
obiter dictum. See Larson v. Johnson, 1 Ill. App. 2d 36, 40,
116 N.E.2d 187 (1953).
 In Maere, 116 Ill. App. 3d 939, the plaintiffs sought
recovery against their attorneys for damages allegedly sustained
when the attorneys failed to properly examine the title of a
parcel of property the plaintiffs had contracted to purchase. 
The complaint in Maere asserted claims based upon breach of
contract and negligence, and sought damages in both counts for
emotional distress as well as pecuniary loss. The trial court
struck the plaintiffs' damage claims for emotional distress
under both theories. In affirming the trial court on this
issue, the Third District of this court analyzed the
circumstances under which damages for emotional distress can be
recovered in actions for breach of contract and negligence. As
to the propriety of the trial court's order striking the
plaintiffs' prayer for emotional distress damages in their
breach of contract count, the Maere court held that "damages for
breach [of contract] will not be given as compensation for
mental suffering, except where the breach was wanton or reckless
and caused bodily harm, or where the defendant had reason to
know, when the contract was made, that its breach would cause
mental suffering for reasons other than mere pecuniary loss." 
Maere, 116 Ill. App. 3d at 944. As to the negligence count, the
court found that this State's long standing rule barring
recovery for emotional distress under a negligence theory in the
absence of an accompanying physical impact, even as modified by
the "zone-of-physical-danger rule" adopted in Rickey v. Chicago
Transit Authority, 98 Ill. 2d 546, 457 N.E.2d 1 (1983), "is not
broad enough[] *** to permit recovery *** where the emotional
distress is premised solely upon alleged negligence *** in
performing legal work ***." Maere, 116 Ill. App. 3d at 945.
 The court in Suppressed was called upon to review the
dismissal of a complaint for breach of fiduciary duty against an
attorney based upon allegations strikingly similar to those in
the instant action. Specifically, the plaintiff in Suppressed
alleged that her attorney breached his fiduciary duty when he
"psychologically coerced or seduced her into having sexual
relations with him at the same time that he was to be
representing her in a divorce action." Suppressed, 206 Ill.
App. 3d at 920. In that case, the court held that the fiduciary
duty owed by an attorney should not extend to an attorney's
personal relationships with his clients, "unless there is
tangible evidence that the attorney actually made his
professional services contingent upon the sexual involvement or
that his legal representation of the client was, in fact,
adversely affected." Suppressed, 206 Ill. App. 3d at 925. The
court went on to opine that, even if it were to assume that it
was a breach of fiduciary duty for an attorney to engage in
sexual relations with a client, dismissal of the complaint was
still appropriate as the plaintiff had failed to allege any
actual damages stemming from a loss suffered in her underlying
dissolution action or that her legal position was compromised by
the breach alleged. Suppressed, 206 Ill. App. 3d at 925-26. 
Relying primarily upon the traditional argument of "potential
for abuse", the court went on to hold that mental distress,
"absent any quantifiable injury stemming from an attorney's
legal representation of his client", is insufficient to support
an action for breach of fiduciary duty against an attorney. 
Suppressed, 206 Ill. App. 3d at 925-26.
 The plaintiff urges this court to decline to follow the
"quid pro quo" and "adverse effects" limitations on an
attorney's liability for breach of fiduciary duty by reason of
having taken sexual advantage of a client as articulated in
Suppressed. According to the plaintiff, the holding in
Suppressed is contrary to the principles set forth by the
supreme court in Corgan v. Muehling, 143 Ill. 2d 296, 574 N.E.2d
602 (1991), and is grounded in a policy justification
specifically rejected in Corgan. As an alternative, the
plaintiff argues that, even if we were to follow Suppressed, her
complaint satisfied both the quid pro quo and adverse effects
limitations, and also alleged actual damages stemming from the
defendant's breach of fiduciary duty.
 In Corgan, the supreme court held that the zone-of-
physical-danger rule adopted in Rickey, 98 Ill. 2d 546, was
inapplicable to patients who directly suffer emotional distress
due to a psychotherapist's negligence in engaging in sexual
relations with them. Corgan, 143 Ill. 2d at 308. The court
also rejected the requirement that there be a manifestation of
physical symptoms in order to allow recovery for emotional
distress damages. In so doing, the court implicitly rejected
the "potential for abuse" as a valid justification for the
disallowance of damages for the negligent infliction of
emotional distress absent physical symptoms. Corgan, 143 Ill.
2d at 309-10.
 Unlike the court in Corgan, we are not called upon to
determine whether the plaintiff might be entitled to recover
emotional distress damages from the defendant under a negligence
theory. That inquiry has been foreclosed by reason of the
waiver principles discussed earlier. Rather, our task is to
decide whether such damages are compensable in the context of a
breach of fiduciary duty claim against an attorney.
 We do not believe that the holding in Corgan should be
heralded as the demise of all distinction between actions which
are essentially contract based and those which sound in tort
merely because an aggrieved party claims damages for emotional
distress. We do not read Corgan so broadly as to support the
notion that by breaching a contract, even under circumstances
evincing culpable negligence, one necessarily becomes liable in
tort merely because the non-breaching party suffers some
emotional distress as a consequence of the breach. Although
admitting that the line between breach of contract and tort is
in some cases blurred at best, we are not prepared to concede
that the distinction has ceased to exist. To be sure, breach of
contract under some circumstances is cognizable in tort;
however, the metamorphosis is not necessarily the result of the
type of injury suffered as much as it is a function of the
foreseeability, at the time of contracting or breach, of the
type of harm that tort law was designed to remedy. Reasoning
from the injury to the classification of an action, and thus
determining the range of compensable damage, is exactly the
reverse logic that has led to the controversy and criticism
surrounding the economic loss doctrine. Consequently, we
believe that courts must look not only to the type of injury
suffered in determining whether contract or tort principles will
govern an action, but must also look to 1) the relationship of
the parties, 2) the subject matter of the contract, if any, from
which that relationship sprung, and 3) the foreseeability of
harm reasonably contemplated both at the time the relationship
came into existence and at the time of the injury causing
conduct. See Collins v. Reynard, 154 Ill. 2d 48, 607 N.E.2d
1185 (1992).
 A close examination of the opinion in Corgan reveals that
the court did not reason from the injury, mental distress, to
its conclusion that the plaintiff was a direct victim of
negligence and, as a consequence, entitled to recover damages
for mental distress. Rather, the court analyzed the question of
whether the actions of the defendant-therapist were in breach of
a cognizable duty owed to his patient resulting in the harm
claimed. After determining that the nature of the therapist-
patient relationship gives rise to a duty on the part of the
therapist to refrain from activity which carries a foreseeable,
and unreasonable, risk of causing emotional harm to a patient,
the court found that sexual relations with a patient constitutes
a breach of that duty rendering the therapist liable in tort for
the proximately resulting emotional distress suffered by the
patient. Corgan, 143 Ill. 2d at 306-308.
 In Collins, 154 Ill. 2d 48, the supreme court held that "a
complaint against a lawyer for professional malpractice may be
couched in either contract or tort ***." 154 Ill. 2d at 50. 
Included within the rubric of legal malpractice are claims
grounded in breach of contract, negligence, and breach of
fiduciary duty. See Metrick, 266 Ill. App. 3d 649. Although
the decision in Collins eliminated the distinctions separating
contract actions and tort actions as they relate to the limits
imposed on the recovery of economic losses in legal malpractice
actions, it did not change the circumstances under which a
lawyer may be sued for malpractice, nor did it change the
damages recoverable. Collins, 154 Ill. 2d at 52.
 Breach of fiduciary duty is controlled by the substantive
laws of agency, contract, and equity. Kinzer v. City of
Chicago, 128 Ill. 2d 437, 445, 539 N.E.2d 1216 (1989); LaSalle
National Trust, N.A. v. Board of Directors of the 1100 Lake
Shore Drive Condominium, No 1-95-4064, slip op. at 9 (March 20,
1997). We can conceive of no principled reason to declare
breach of fiduciary duty to be a tort merely because the
breaching party is an attorney.
 Much has been written of late on the subject of the sexual
involvement of attorneys with their clients. There is no doubt
any longer that such behavior can result in professional
discipline in Illinois. See In re Rinella, 175 Ill. 2d 504, 677
N.E.2d 909 (1997). However, the mere fact that an attorney may
have violated professional ethics does not, of itself, give rise
to a cause of action for damages. Nagy v. Beckley, 218 Ill.
App. 3d 875, 578 N.E.2d 1134 (1991). We find that no useful
purpose would be served by cataloging the cases from other
jurisdictions that have addressed the question of whether, and
under what circumstances, an attorney can be held liable by
reason of having engaged in a sexual relationship with a client,
a task recently undertaken by the Rhode Island Supreme Court in
Vallinoto v. DiSandro, No. 93-379 (R.I. February 11, 1997). It
is sufficient to comment that the resolution of the issue
throughout the country has not been at all consistent.
 We begin our analysis with certain very basic principles: 
1) breach of fiduciary duty is not a tort, rather it is governed
by the substantive law of contracts (Kinzer, 128 Ill. 2d at
445); 2) sexual intercourse between two consenting adults is
not, of itself, actionable conduct (see Hertel v. Sullivan, 261
Ill. App. 3d 156, 160, 633 N.E.2d 36 (1994)); and 3) the nature
of the attorney-client relationship does not give rise to a duty
on the part of the attorney to improve a client's mental or
emotional well-being (Suppressed, 206 Ill. App. 3d at 923-24). 
Our agreement with the holding in Suppressed, that the essential
purpose of an attorney-client relationship is the provision of
competent legal services rather than the improvement of the
client's emotional well-being, should not, however, be taken as
our concurrence with that decision's narrow view of the
fiduciary duty imposed upon an attorney by reason of that
relationship.
 The court in Suppressed did "not believe that the higher
standard of care required of a fiduciary should extend to an
attorney's personal relationships with his clients, unless there
is tangible evidence that the attorney actually made his
professional services contingent upon the sexual involvement or
that his legal representation of the client was, in fact,
adversely affected." Suppressed, 206 Ill. App. 3d at 925.
 While we certainly agree with the notion that an attorney's
sexual relationship with a client constitutes a breach of
fiduciary duty when the attorney makes his legal representation
contingent upon sexual involvement or when the client's legal
interests are compromised as a result, we cannot agree that all
other sexual involvement with a client is either purely
"personal" or outside of the scope of an attorney's fiduciary
obligations. If an attorney obtains information in the course
of representing a client which suggests that the client might be
unusually vulnerable to a suggestion of sexual involvement and
the attorney uses that information to seduce the client, we
would find a breach of fiduciary duty without regard to whether
the client was charged a usual monetary fee or the client's
legal interests suffered as a result. An attorney simply cannot
use information obtained in the representation of a client to
entice her into a sexual relationship that she otherwise would
not have engaged in and then claim that the relationship is
purely personal or that he has not breached his fiduciary duty. 
That is not to say that the client would in all cases be
entitled to a recovery, she would still be required to show some
compensable damage. However, on the issue of the type of
damages necessary to support an action for breach of fiduciary
duty against an attorney, we also find ourselves in disagreement
with the holding in Suppressed.
 As stated earlier, the court in Suppressed held that mental
distress, "absent any quantifiable injury stemming from an
attorney's legal representation of his client", is insufficient
to support an action for breach of fiduciary duty against an
attorney. Suppressed, 206 Ill. App. 3d at 925-26. We disagree.
 In determining the range of compensable damages under the
law of contracts, Illinois follows the rule in Hadley v.
Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854), that recoverable
damages are those which naturally result from the breach, or
are the consequence of special or unusual circumstances which
are in the reasonable contemplation of the parties when making
the contract. Midland Hotel Corp. v. Reuben H. Donnelley Corp.,
118 Ill. 2d 306, 515 N.E.2d 61 (1987). Recovery for mental
distress is "excluded unless *** the contract or the breach is
of such a kind that serious emotional disturbance was a
particularly likely result." Restatement (Second) of Contracts
sec. 353, at 149 (1981); see also Maere, 116 Ill. App. 3d at
943-44.
 Unlike the therapist-patient relationship, there is nothing
in the nature of the attorney-client relationship which, of
itself, would allow us to conclude that an attorney is on notice
that a breach of fiduciary duty would likely result in serious
emotional distress to his client. Of course, certain types of
engagements, such as actions for dissolution of marriage,
adoption, and the termination of parental rights, inherently
give rise to emotional issues. See Pagano, 154 Ill. 2d at 185;
Petrowsky v. Family Service of Decatur, Inc., 165 Ill. App. 3d
32, 518 N.E.2d 664 (1987). However, the mere fact that the
subject matter of the contract encompasses sensitive issues does
not mean that a breach of the contract will necessarily result
in severe emotional distress. It is only when the attorney has
reason to know that a breach of his fiduciary duty is likely to
cause emotional distress, for reasons other than pecuniary loss,
that damages will be given as compensation for mental suffering. 
Maere, 116 Ill. App. 3d at 944; see also Petrowsky, 165 Ill.
App. 3d at 38-9.
 In this case, the plaintiff alleged, inter alia, that: she
engaged the defendant to represent her in an emotionally trying
divorce; the defendant knew she was experiencing feelings of
anxiety and insecurity; she became dependent upon the defendant;
and she experienced emotional distress as a consequence of
having engaged in a sexual relationship with the defendant. We
believe the plaintiff has pled sufficient facts to support the
conclusion that the defendant used his position as the
plaintiff's attorney and his knowledge of her dependence upon
him to gain sexual favors, thus breaching his fiduciary duty. 
Additionally, the plaintiff's complaint also contains facts from
which it can be inferred that, at the time the defendant engaged
in sexual relations with the plaintiff, he should have know of
her dependence upon him and the emotional distress that could
result from such behavior. In sum, we find that the plaintiff
has pled sufficient facts to enable her to pursue damages for
mental distress in her breach of fiduciary duty claim.
 We do not mean to suggest by our opinion in this case that
all sexual involvement with a client rises to the level of
breach of fiduciary duty on the part of an attorney. If an
attorney and a client are personally attracted to each other and
that attraction is not the product of any undue influence or
abuse of confidential information on the part of the attorney,
then any resulting sexual involvement between such individuals
is a purely personal matter between two consenting adults.
 We address the plaintiff's final argument on appeal
together with the defendant's cross-appeal, because both concern
the denial of the parties' respective petitions for sanctions
under Supreme Court Rule 137. 134 Ill. 2d R. 137. The
defendant brought the initial petition for sanctions against the
plaintiff based upon her complaint. The plaintiff responded
with her own petition for sanctions, charging that the
defendant's sanctions petition was vexatious and imposed solely
to harass and intimidate her.
 At the hearing on the defendant's petition, three witnesses
testified. Prior to the conclusion of the defendant's evidence,
the trial court summarily ruled for the plaintiff. The
defendant now argues that this summary disposition was premature
and that further testimony would have established conclusively
that the plaintiff fabricated her claims against him.
 The purpose of Rule 137 sanctions is to prevent the abuse
of the judicial process by punishing a party who brings
vexatious or harassing litigation based upon unfounded
statements of fact or law; it is not intended merely to penalize
claimants for lack of success. Fremarek v. John Hancock Mutual
Life Insurance Co., 272 Ill. App. 3d 1067, 1074, 651 N.E.2d 601
(1995). The determination of whether or not to impose sanctions
lies within the trial court's discretion, the exercise of which
will not be disturbed absent abuse. See Yassin v. Certified
Grocers of Illinois, Inc., 133 Ill. 2d 458, 467, 551 N.E.2d 1319
(1990). Whether a full hearing is required on a sanctions
petition depends upon the facts of each case. If it becomes
apparent from the material on file that a full hearing is
unwarranted and that there is sufficient information to decide
the petition, the trial court may, in its discretion, decide it
on a summary basis. Olsen v. Staniak, 260 Ill. App. 3d 856,
862, 632 N.E.2d 168 (1994).
 The defendant presented the testimony of two of his former
employees, and the plaintiff as an adverse witness. With this
testimony, the defendant essentially endeavored to discredit the
plaintiff's allegations that she felt compelled to have sex with
him, and that she suffered emotional distress as a result of the
unwanted relationship. The defendant argues that, if allowed to
complete his proof on the motion for sanctions, he would have
attempted to follow up on testimony by the plaintiff that she
had seen a psychiatrist for a lengthy period of time while
seeing the defendant, and yet never complained to the
psychiatrist about the relationship.
 We find no abuse of discretion in the trial court's ruling
on the defendant's petition. The court considered the recent
findings of the hearing board of the Attorney Registration and
Disciplinary Commission, that the defendant had in fact breached
his fiduciary duty to the plaintiff by using his status to force
her into a sexual relationship. Further, while the testimony of
the defendant's employees did cast doubt upon the plaintiff's
claim of emotional distress, it reflected only those witnesses'
perceptions of the plaintiff's conduct. The testimony did not
establish conclusively that her claim was vexatious or without
any basis in fact; rather, it merely showed that a bona fide
dispute existed over the allegations in the complaint.
 Nor was there error in the denial of the plaintiff's
sanctions petition. The plaintiff contended that the
defendant's petition was in bad faith because it was directed
against the plaintiff personally rather than against her
counsel. However, the defendant's petition was based primarily
upon the plaintiff's alleged misrepresentation of the facts
essential to her complaint. We have reviewed the evidence
presented in support of the defendant's petition and conclude
that, in light of the fact that a bona fide dispute existed over
the facts alleged in this case, the court did not abuse its
discretion in failing to grant sanctions against the defendant.
 For the foregoing reasons, we affirm the denial of the
parties' respective motions for sanctions, reverse the dismissal
of the third-amended complaint, and remand this case for
proceedings consistent with this opinion.
 Affirmed in part, reversed in part, and remanded.
 CAHILL and O'BRIEN, JJ., concur.