MARELLA HANUMADASS, Plaintiff-Appellant, v. COFFIELD, UNGARETTI AND HARRIS, Defendant-Appellee.

First District (2nd Division)   No. 1—98—3275

Opinion filed December 28, 1999.

Deidre Baumann, of Chicago, for appellant.

Theodore E. Harman, of Ungaretti & Harris, of Chicago, for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Marella Hanumadass, a physician formerly employed by Cook County Hospital, filed a legal malpractice action in the circuit court of Cook County against defendant, Coffield, Ungaretti & Harris, a law firm employed by the county to defend plaintiff in an action for medical malpractice that was settled without plaintiff's knowledge. Following trial, a jury returned a verdict in plaintiff's favor as to liability and awarded him $1 in damages. Plaintiff filed a posttrial motion for judgment notwithstanding the verdict or, in the alternative, a new trial on damages only, which was denied by the circuit court. On appeal, plaintiff contends: (1) the circuit court erred, as a matter of law, in barring damages for loss of reputation, embarrassment, health and state of mind; and (2) the jury verdict, awarding plaintiff $1 in damages, was against the manifest weight of the evidence.

For the following reasons, we affirm.

BACKGROUND

On August 8, 1983, a complaint was filed against Cook County Hospital and seven of its doctors, including plaintiff, for medical malpractice that resulted in the death of Marion Madison, a patient at the hospital. See Bass v. County of Cook, 83—L—15532 (*Bass*). Pursuant to an ordinance by the Cook County Board of Commissioners, the State's Attorney's office assigned the case to Coffield, Ungaretti & Harris (the law firm) to represent Cook County Hospital and the seven doctors in their defense of the litigation. See Ordinance No. 80—O—1 by Cook County Board of Commissioners (eff. January 7, 1980).

On December 14, 1989, Robert Chapman, one of plaintiff's attorneys, executed a "Settlement Agreement and Mutual Release," which dismissed all of the defendants from the *Bass* action for the payment of $200,000. The settlement disclaimed any liability on behalf of any of the doctors or the hospital, and Cook County paid the entire amount of the settlement as well as all legal fees associated with the defense of the litigation. However, plaintiff neither signed the settlement agreement nor was he informed of the settlement until approximately eight months after it was signed by Chapman.

Pursuant to the mandatory reporting provision of the Medical Practice Act of 1987 (Medical Practice Act or Act) (225 ILCS 60/1 *et seq.* (West 1998)), any settlement of a malpractice case against a physician must automatically be reported to the Medical Disciplinary Board within the Department of Professional Regulation (the Department).

As such, in connection with the settlement of the *Bass* lawsuit, Cook County Hospital submitted a "Professional Conduct and Disability Report" (disability report) regarding plaintiff's actions to the Department. See 225 ILCS 60/22 (West 1998).

After receipt of an August 13, 1990, letter written by the disciplinary board informing plaintiff that he had been reported by Cook County Hospital, plaintiff retained the law firm of Cornfield & Feldman to seek a retraction from the hospital. On October 12, 1990, at the behest of plaintiff's attorneys, Dr. Terrence M. Hanson, director of Cook County Hospital, sent a letter to Kevin K. Wright, Director of the Department, advising him that the disability report regarding plaintiff in connection with the *Bass* lawsuit was incorrect and should be withdrawn. The report was not withdrawn; however, after investigation and in response to Dr. Hanson's correspondence, the Department concluded that no further investigation was necessary.

On July 22, 1992, plaintiff filed a two-count amended complaint against the law firm, alleging, *inter alia*, that an attorney-client relationship existed between plaintiff and the law firm. Count I asserted that the law firm breached its duty "of competent representation and of undivided loyalty and of providing a level of representation that constituted a reasonable degree of care and skill" by failing to do 15 separate actions, including failure to bring a motion to dismiss plaintiff from the malpractice action "in the face of evidence that plaintiff could not possibly have been responsible for the underlying malpractice" and failure to inform plaintiff that a settlement had taken place. Count II alleged a breach of contract by the law firm and set forth claimed violations of the Illinois Rules of Professional Conduct, specifically Rules 1.1, 1.3, 1.4, 1.7, 1.13, 3.2, 3.3 and 3.4 (134 Ill. 2d Rs. 1.1, 1.3, 1.4, 1.7, 1.13, 3.2, 3.3, 3.4). Additionally, plaintiff alleged that, as a third-party beneficiary of the contract between the law firm and Cook County, his reputation was injured by the law firm's specific acts of misconduct referred to in count I.

On April 8, 1993, upon the law firm's motion, plaintiff's amended complaint was dismissed with prejudice insofar as it was predicated on "the settlement issue"; however, plaintiff was given leave to file an amended complaint with regard to "any other issues of representation."

On June 24, 1994, this court reversed the order of the circuit court, finding that plaintiff was entitled to a full disclosure of any intent to settle the *Bass* litigation without his consent. This court further remanded the case for a trial on the merits to resolve the issue of whether an attorney is liable for malpractice despite the fact that the underlying case was settled. See *Hanumadass v. Coffield, Ungaretti &*

*Harris, Ltd.*, No. 1—93—1589 (1994) (unpublished order under Supreme Court Rule 23).

On November 9, 1994, plaintiff's amended complaint was reinstated by the circuit court, as directed by this court in *Hanumadass*. A jury trial commenced on June 29, 1998, and concluded on June 30, 1998. Following the presentation of evidence, the jury returned a verdict in favor of plaintiff as to liability and awarded him $1 in damages. Thereafter, on July 29, 1998, plaintiff filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial on damages. On August 10, 1998, following a hearing on the matter, plaintiff's motion was denied.

On September 4, 1998, plaintiff timely filed his notice of appeal.

ANALYSIS

I

Prior to trial, the law firm submitted a motion *in limine* to bar damages based on "loss of reputation, embarrassment, health and state of mind." After argument, the motion was granted. On appeal, plaintiff contends that the circuit court erred, as a matter of law, in barring damages for loss of reputation, embarrassment, health and state of mind. More specifically, plaintiff avers that the trial court erred in concluding that *Doe v. Roe*, 289 Ill. App. 3d 116, 681 N.E.2d 640 (1997), was controlling authority in the face of *Horn v. Croegaert*, 187 Ill. App. 3d 53, 542 N.E.2d 1124 (1989), as the cause of action in the *Doe* case was not based on a negligence theory of malpractice. Instead, plaintiff posits that noneconomic emotional distress damages should be recoverable because: (1) general tort principles support such an award; (2) such an award is appropriate when defendant's conduct is egregious; and (3) such an award is appropriate due to "the fundamental impact" that defendant's negligence had on plaintiff's ability to fully perform his "life's work." We disagree.

In *Horn*, a pensioner widow brought a legal malpractice action against her former lawyer, alleging that (1) she would have married an oilman who became successful instead of living with him if her lawyer had not improperly advised her that marriage would have destroyed her pension, and (2) her lawyer failed to advise her to get an oil business deal entered into with the oilman in writing. The Fifth District of the Illinois Appellate Court held that damages for marital protection were not so speculative as to preclude maintenance of a claim for bad advice by her lawyer that prevented marriage. *Horn*, 187 Ill. App. 3d at 55-56, 542 N.E.2d at 1126. The court further held that damages resulting from the lack of a written agreement regarding her business

relationship with the oilman were not so speculative as to preclude maintaining a claim for defendant's failure to advise her to get the business deal in writing. *Horn*, 187 Ill. App. 3d at 57, 542 N.E.2d at 1127.

We dispense of the attempt to analyze the *Horn* opinion, as did this court in *Doe*, as the court in that case "did not favor us with any reasoning or citation to authority in support of its conclusion that damages for emotional distress are recoverable in a legal malpractice action." *Doe*, 289 Ill. App. 3d at 125, 681 N.E.2d at 647. Rather, in our view, plaintiff's reliance on *Horn* is misplaced, as the language relied upon by plaintiff in support of his assertion that he is entitled to noneconomic losses by reason of "[l]oss of self-esteem, shame, public ridicule and moral anguish" (*Horn*, 187 Ill. App. 3d at 56-57, 542 N.E.2d at 1126) has been found to be *obiter dictum*. See *Doe*, 289 Ill. App. 3d at 125, 681 N.E.2d at 647. Accordingly, we agree that the lower court properly decided to follow *Doe* as controlling authority regarding the availability of noneconomic emotional distress damages in legal malpractice actions.

In *Doe*, a client filed suit against her former lawyer, who was hired to represent her in an action for dissolution of marriage, claiming that the lawyer breached his fiduciary duty to her by coercing her into a sexual relationship with him. After noting that only three appellate cases in Illinois other than the present action addressed the issue of whether emotional distress damages were recoverable against an attorney in a legal malpractice action (see *Maere v. Churchill*, 116 Ill. App. 3d 939, 452 N.E.2d 694 (1983); *Horn v. Croegaert*, 187 Ill. App. 3d 53, 542 N.E.2d 1124 (1989); *Suppressed v. Suppressed*, 206 Ill. App. 3d 918, 565 N.E.2d 101 (1990)), this court held that the essential purpose of the attorney-client relationship is the provision of competent legal services, which does not give rise to a duty on the part of the attorney to improve a client's mental or emotional well-being. *Doe*, 289 Ill. App. 3d at 129, 681 N.E.2d at 649. See also *Suppressed*, 206 Ill. App. 3d at 925, 565 N.E.2d at 105 ("the higher standard of care required of a fiduciary should [not] extend to an attorney's personal relationships with his clients, unless there is tangible evidence that *** his legal representation of the client was, in fact, adversely affected").

■ In our view, the case at bar concerns a question of contract law that is characterized by plaintiff as a tort action. While our supreme court has held that "a complaint against a lawyer for professional malpractice may be couched in either contract or tort" (*Collins v. Reynard*, 154 Ill. 2d 48, 50, 607 N.E.2d 1185, 1186 (1992)), included within the rubric of legal malpractice are claims grounded in breach of

contract, negligence, and breach of fiduciary duty. *Doe*, 289 Ill. App. 3d at 128, 681 N.E.2d at 649. As such:

> "In determining the range of compensable damages under the law of contracts, Illinois follows the rule in *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854), that recoverable damages are those that naturally result from the breach or are the consequence of special or unusual circumstances that are in the reasonable contemplation of the parties when making the contract. [Citation.] Recovery for mental distress is 'excluded unless *** the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.' [Citations.]" *Doe*, 289 Ill. App. 3d at 130, 681 N.E.2d at 650.

■ Plaintiff correctly indicates that *Doe* does not directly decide whether a plaintiff might be able to recover emotional distress damages under a negligence theory. However, after a thorough review of the record, we agree that there is no evidence that the law firm had any reason to know that the failure to notify plaintiff of the settlement would lead to the alleged emotional distress. See *Doe*, 289 Ill. App. 3d at 130, 681 N.E.2d at 650 ("[i]t is only when the attorney has reason to know that a breach of his fiduciary duty is likely to cause emotional distress, for reasons other than pecuniary loss, that damages will be given as compensation for mental suffering"); see also *Maere*, 116 Ill. App. 3d at 943-44, 452 N.E.2d at 697 (holding that mental anguish damages were not recoverable under either a contract or negligence theory because plaintiff's complaint did not allege that defendants' breach of contract was intentional, reckless or wanton); *Suppressed*, 206 Ill. App. 3d at 925, 565 N.E.2d at 106 (holding that, absent any quantifiable injury resulting from the attorney's representation, plaintiff's emotional harm was insufficient to support an action for legal malpractice); *Segall v. Berkson*, 139 Ill. App. 3d 325, 331, 487 N.E.2d 752, 756 (1985) (holding that the zone of physical danger rule announced in *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 457 N.E.2d 1 (1983), was insufficient to provide a basis for recovery of damages for alleged emotional distress caused solely by the negligent performance of legal work).

In addition, plaintiff's reliance on *Corgan v. Muehling*, 143 Ill. 2d 296, 574 N.E.2d 602 (1991), is similarly misplaced. In *Corgan*, plaintiff sought to recover damages from her psychologist under a theory of negligent infliction of emotional distress after they engaged in sexual intercourse under the guise of treatment. As noted in *Doe*, our supreme court found that the nature of the therapist-patient relationship gives rise to the duty on the part of the therapist to refrain from activity that carries a foreseeable and unreasonable risk of causing

emotional or mental harm to a patient. *Doe*, 289 Ill. App. 3d at 128, 681 N.E.2d at 648, citing *Corgan*, 143 Ill. 2d at 307, 574 N.E.2d at 607. However, "[w]e do not read *Corgan* so broadly as to support the notion that, by breaching a contract, even under circumstances evincing culpable negligence, one necessarily becomes liable in tort merely because the nonbreaching party suffers some emotional distress as a consequence of the breach." *Doe*, 289 Ill. App. 3d at 127, 681 N.E.2d at 648. Rather, in *Brogan v. Mitchell International, Inc.*, 181 Ill. 2d 178, 185, 692 N.E.2d 276, 278 (1998), our supreme court indicated that there exists no broad duty to avoid misrepresentations that cause only emotional distress, thereby limiting the holding in *Corgan*.

In *Brogan*, a former employee sued his employer for negligent misrepresentations during his employment that allegedly resulted in severe emotional harm. The trial court dismissed all of plaintiff's claims, and the appellate court relied on *Corgan* to hold that the allegation of severe emotional distress was sufficient to establish the physical injury necessary to support a duty to convey accurate information. See *Brogan v. Mitchell International, Inc.*, No. 1—95—0235 (1996) (unpublished order under Supreme Court Rule 23). In reversing the appellate court decision, our supreme court explained that, in *Corgan*, the very nature of the therapist-patient relationship gives rise to a duty to avoid activity that might result in emotional or mental harm. *Brogan*, 181 Ill. 2d at 184, 692 N.E.2d at 278. The court further recognized, however, that *Corgan* could not be taken to expand the scope of the tort of negligent misrepresentation beyond its normal boundaries. *Brogan*, 181 Ill. 2d at 184, 692 N.E.2d at 278. Rather, "[t]he limited nature of negligent misrepresentation liability serves to preserve the proper sphere of contractual-based recovery and prevents the creation of tort liability which could unduly impede the flow of communication in society." *Brogan*, 181 Ill. 2d at 185, 692 N.E.2d at 278. Similarly, we agree here that *Corgan* should not be read to suggest that legal malpractice claims sounding in contract should give rise to emotional distress claims.

In our view, the law firm in the case at bar acted to protect plaintiff's interests by obtaining a settlement that released and disclaimed him of liability, while requiring no contribution on his part. The law firm concedes that the failure to notify plaintiff of the settlement agreement may have been a mistake; however, we cannot say that such a mistake was so egregious as to warrant noneconomic damages. *Cf. Gautum v. De Luca*, 215 N.J. Super. 388, 521 A.2d 1343 (1987). In the alternative, however, plaintiff contends that the damages for which plaintiff sought compensation were economic in nature, as his "lost book writing opportunity" was compensable in tort as a direct

pecuniary loss from an intangible property interest. See *Yates v. Muir*, 130 Ill. App. 3d 604, 609, 474 N.E.2d 934, 937 (1985), *rev'd on other grounds*, 112 Ill. 2d 205, 492 N.E.2d 1267 (1986). The lower court rejected this argument, finding that such a loss was noneconomic in nature. We agree.

Upon questioning by the lower court, plaintiff recognized that the publisher did not take an opportunity away from plaintiff because of any loss of reputation caused by the reporting of the settlement. In fact, the publisher continually asked plaintiff to write the book. Plaintiff, however, could not complete the book due to alleged emotional distress caused from the settlement of the *Bass* lawsuit. Therefore, in our view, the "lost book writing opportunity" was plaintiff's way of quantifying emotional distress damages for which we have previously held the law firm in the instant case cannot be liable. See *Doe*, 289 Ill. App. 3d at 130, 651 N.E.2d at 650.

## II

Following plaintiff's employment of Cornfield & Feldman, Cook County Hospital mailed a retraction to the Department of Professional Regulation regarding plaintiff's actions in connection with the *Bass* lawsuit. As such, plaintiff contends that the jury verdict, awarding plaintiff $1 in damages, was against the manifest weight of the evidence because "no reasonable juror could have failed to conclude that [plaintiff] was at least entitled to $720, the cost of obtaining a retraction from Cook County Hospital."

■ The standard of review of a jury verdict is whether the verdict is against the manifest weight of the evidence. *NWI International, Inc. v. Edgewood Bank*, 291 Ill. App. 3d 247, 259, 684 N.E.2d 401, 409 (1997). And, it is unquestionable that damages are within the discretion of the jury, as they present a question of fact. *Snover v. McGraw*, 172 Ill. 2d 438, 447, 667 N.E.2d 1310, 1315 (1996). Therefore, as the jury is free to determine the credibility of witnesses and to assess the weight accorded to their testimony (*Maple v. Gustafson*, 151 Ill. 2d 445, 452, 603 N.E.2d 508, 511-12 (1992)), a reviewing court will affirm verdicts, however low, which are sustained by evidence or the absence of particular evidence. *Buttita v. Stenberg*, 246 Ill. App. 3d 1012, 1022, 617 N.E.2d 122, 128 (1993).

■ In the instant case, it is undisputed that the law firm had the authority to dispose of the *Bass* action by settlement without plaintiff's approval even had plaintiff been notified by the law firm prior to the offer of settlement. See Cook County Ordinances §§ 22 through 24 (eff. November 3, 1986). Accordingly, the question before the jury was whether the law firm's failure to notify plaintiff made it liable for

legal malpractice despite the settlement. See *Hanumadass v. Coffield, Ungaretti & Harris, Ltd.*, No. 1—93—1589 (1994) (unpublished order under Supreme Court Rule 23). Following trial, the jury answered the question in the affirmative.

Nonetheless, plaintiff argues that he should be entitled to more than $1 in damages, as he paid Cornfield & Feldman $720 for its efforts in obtaining a retraction from Cook County Hospital regarding the disability report. No evidence was presented, however, that the law firm caused the disability report upon which plaintiff's emotional distress claims were based to be sent to the Department prior to the hospital's retraction. Rather, pursuant to the Medical Practice Act, upon settlement or final judgment in plaintiff's favor from an action grounded in an allegation that the person licensed thereunder was negligent in providing care, a disability report is to be *automatically* sent to the disciplinary board so that an investigation into formal disciplinary proceedings under section 36 of the Act (225 ILCS 60/36 (West 1998)) can be held, except as otherwise provided by law. 225 ILCS 60/22 (West 1998). In the absence of evidence that, but for the law firm's failure to notify plaintiff of the settlement agreement, plaintiff's reputation would have remained intact, it is our view that the jury reasonably could have concluded that plaintiff suffered no actual, quantifiable damages as a result of the legal malpractice of the law firm. Accordingly, we cannot find that the jury's verdict was against the manifest weight of the evidence. See *NWI*, 291 Ill. App. 3d at 259, 684 N.E.2d at 409.

For the foregoing reasons, the decision of the circuit court is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.